ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
CISERO K. MURPHY, JR.,

                              Plaintiff,

                  v.

TYRIEK A. MURPHY,

                              Defendant.
------------------------------------------------------X

ЯECEIVED
MAY 0 7 2021
PRO SE OFFICE
*Rec in P drive 5/11/21 rg

**PRE-ANSWER MOTION TO DISMISS**

20-CV-2388

## DEFENSE OPENING STATEMENT

1.      In accordance with Federal Rules of Civil Procedure (FRCP) Rule 8, (b)(3), the

Defendant unequivocally **denies all** of Plaintiff's allegations as filed in Plaintiff Complaint.  The

Defendant unambiguously concurs with Plaintiff Complaint sections: **Jurisdiction and Venue**

Paragraphs 11 to 14, **Parties** Paragraphs 15 to 16, **Facts** Paragraph A 12, Paragraphs F 35 to 36,

38, Paragraphs H 62 to 63, Paragraphs J 72, 75, 77, 79, 82, 90, 91, and Paragraph L 115.

2.      In accordance with FRCP Rule 8, (c)(1) Fraud and Statute of Frauds, the Defendant

**denies all allegations** as filed within Plaintiff Complaint.  The Plaintiff and his previous three

(3) different legal advisors/law firms were provided overwhelmingly clear and precise evidence

depicting the Plaintiff's assertions, as it pertains to this complaint, are meritless, henceforth, the

Plaintiff attorneys refusing to represent him, and Plaintiff then filing this Pro Se action.  In the

Plaintiff's cupidity to file this civil claim, the Plaintiff, with full intent, knowingly, willingly, and

purposely violated this rule by omitting pertinent facts, evidence, and producing egregious

claims of defamation to this court to seek relief and/or judgement against the Defendant.

Additionally, it should be noted to this court, the subsequent Defense Exhibits are the exact proofs of evidence submitted to Plaintiff and, his then, attorneys.

<div align="center">

**DEFENSE CASE**

</div>

3.    The Defendant **denies all** the allegations in Plaintiff's Complaint, **Nature of the Case, Paragraphs 1 to 8**. The Defendant made it clear to Plaintiff, in 2010 upon entering Undergraduate School, that the Defendant was going to start a business entity with the primary focus on business management consulting and further related focus would extend to Cisero S. Murphy (hereinafter Cisero Sr.) untold legacy.

4.    In 2016, after Defendant graduated from two (2) colleges, Defendant verbally and in written communication informed Plaintiff of the goal to implement and solidify the previously mentioned plan, in paragraph 3. From 2012 to 2016, Plaintiff was fully aware of Defendant conducting research and background on Cisero Sr., for Cisero Sr. biography book (see **Plaintiff's Exhibit D**, Page 22 marked July 3rd, 2016 at 3:29pm). When Plaintiff's 2014 failed family attempt (Plaintiff excluded the Defendant) to produce a documentary of Cisero Sr. imploded, Plaintiff then wanted to work with Defendant. Defendant established Murphy Enterprise Solutions, LLC (hereinafter MES) on June 20th, 2016 **with no help from the Plaintiff** (see **Defense Exhibit A**). Plaintiff verbally asked Defendant how is the process conducted, in which, Defendant elaborated verbally and in written communication to Plaintiff (see **Plaintiff's Exhibit D**, Pages 22 and 18 marked June 14th, 2016 at 8:31pm to June 25th, 2016 at 12:32pm).

5.    From July 2016 to January 2017, Defendant began entering contracts with all individuals who agreed to be a part of MES's project of Cisero Sr., in which they agreed and signed the MES Restricted Disclosure of Content / Release Authorization Form (see **Defense Exhibit B1 to B5**). Plaintiff also signed this contract (see **Plaintiff's Exhibit F**).

6.    The Defendant **denies all** allegations in Plaintiff's Compliant, **Nature of the Case, Paragraphs 9 to 11**.  Defendant finished the final draft of Big City Nights: The Autobiography of the Legendary Cisero Murphy book, in late December 2016.  On January 19th, 2017, the Defendant filed his work with U.S. Copyright Office, in which, Defendant was issued Registration Number: TXu002130697 (see **Defense Exhibit C**).  Plaintiff fraudulently filed Defendant's copyrighted work as Plaintiff's work five (5) to six (6) months later under closely titled names of the Defendant's literary work (see **Plaintiff's Exhibits B and C**).

7.    The Defendant **denies all** allegations in Plaintiff's Complaint, **Facts, Paragraphs B 13 to D 20**. The Defendant has firmly established to this court within **Defense Case, Paragraphs 4 to 6**, the Plaintiff fraudulently filed stolen literary work.

8.    The Defendant **denies all** allegations in Plaintiff's Complaint, **Facts, Paragraphs E 21 to 30**.  In accordance to FRCP Rule 9 (d), The Defendant, and Plaintiff collectively signed two different contracts on January 25th, 2017, the MES Restricted Disclosure of Content / Release Authorization Form and the Forfeiture Contract, in which both documents, in the second and third paragraphs from the bottom, exclusively state "MES and Associate, <u>do not intend</u> to form any… agency, and/or partnership…between them by simultaneously concurring to the agreement" (see **Plaintiff's Exhibits A and F**).  Additionally, in accordance with FRCP Rule 9 (b), the first time the Defendant became aware of Plaintiff's brummagem accusation of them being "Co-Owners of MES" was through the forged document the Plaintiff submitted to his three different legal advisors to utilize as evidence against the Defendant (see **Defense Exhibit D**). The Defendant obtained a copy from Attorney Daniel Angel in his July 3rd, 2018 communication in which he titled it "**Exhibit C**".  Moreover, in accordance with FRCP Rule 9 (b), **Defense Exhibit E1 to E3** is the unedited copy of Attorney Angel July 3rd communication, in which, the

Plaintiff submitted a forged communication document, to this court, that mysteriously excluded Attorney Angel's mention of "Exhibit C", the Defendant's wrong mailing address, and is dated July 2, 2018 (see **Plaintiff's Exhibit M**).

9.    The Defendant **denies all** allegations in Plaintiff Complaint, **Facts, Paragraphs F 31 to 34, 37,** and **39.**

10.    The Defendant **denies all** allegations in Plaintiff Compliant, **Facts, Paragraphs F 40 to 43**. The Plaintiff is purposely misleading this court as the Plaintiff asserts, in the compliant, "On January 16, 2017, Cisero printed three copies of the typed manuscript... Tyriek came out of his house, went into Cisero's car, and stole a copy...".  However, in **Defense Exhibit F1 to F6**, the Defendant confronted the Plaintiff, on May 8th, 2017 at 12:31pm, about printing out Defendant's work and passing it off as Plaintiff's work, in which, Plaintiff vigorously denied printing out Defendant's work.  Plaintiff submitted same documentation to this court (see **Plaintiff Exhibit D**), but the correspondence was jumbled and out of order.

11.    The Defendant **denies all** allegations in Plaintiff Complaint, **Facts, Paragraph G 44 to 60**. In accordance with FRCP Rule 12 (f)(2), Defense Motion to Strike Paragraphs G 44 to 60 of Plaintiff Compliant on grounds of redundant, immaterial, and scandalous matter as it has been established, to this court, Plaintiff confirmed signing the MES Restricted Disclosure of Content / Release Authorization Form and the Forfeiture Contract (see **Plaintiff Exhibit A and F**). Furthermore, **Plaintiff's Exhibit E**, is a signed copy of Defendant's MES Restricted Disclosure of Content / Release Authorization Form with MES, which has no relevance in this complaint. Though, the Plaintiff, once more, attempts to mislead this court into believing **Plaintiff Exhibit E** was a release form between Plaintiff and Defendant.

12.    The Defendant **denies all** allegations in Plaintiff Compliant, **Facts, Paragraphs H 61 and 64**. In accordance with FRCP Rule 12 (f)(2), Defense Motion to Strike Paragraphs H 61 and 64 of Plaintiff Complaint on grounds of redundant and scandalous matter.

13.    The Defendant **denies all** allegations in Plaintiff Complaint, **Facts, Paragraphs I 65 to 70**. In accordance with FRCP Rule 12 (f)(2), Defense Motion to Strike Paragraphs I 65 to 70 of Plaintiff Complaint on grounds of redundant and scandalous matter.

14.    The Defendant **denies all** allegations in Plaintiff Complaint, **Facts, Paragraphs J 71, 73 to 74, 76, 78, 80 to 81, 83 to 89, and 92**. In accordance with FRCP Rule 12 (f)(2), Defense Motion to Strike Paragraphs J 71, 73 to 74, 76, 78, 80 to 81, 83 to 89, and 92 of Plaintiff Complaint on grounds of redundant and scandalous matter.

15.    The Defendant **denies all** allegations in Plaintiff Complaint, **Facts, Paragraphs K 93 to 102**. In accordance with FRCP Rule 12 (f)(2), Defense Motion to Strike Paragraphs K 93 to 102 of Plaintiff Complaint on grounds of redundant and scandalous matter.

16.    The Defendant **denies all** allegations in Plaintiff Complaint **presumably Facts, Paragraphs K 103 to 107**. Defendant's copy of Plaintiff's Complaint does not show paragraphs 103 to 107.

17.    The Defendant **denies all** allegations in Plaintiff Complaint, **Facts, Paragraphs L 108 to 114 and 116 to 121**. In accordance with FRCP Rule 8 (c)(1) Fraud, and FRCP Rule 9 (b) Fraud, whereby, the Plaintiff knowingly, willingly, and purposely deceived this court with the claim of the Defendant defaming Plaintiff to Plaintiff's family and friends. Plaintiff asserts Defendant contacted Plaintiff's sister, Anna Garcia (hereinafter Delarosa Ana) on November 29, 2018, nonetheless, **Defense Exhibits G1 to G4** demonstrates Delarosa Ana initially communicated with the Defendant when Delarosa Ana requested to post an advertisement of an organization,

led by the Plaintiff, on MES Facebook social media page with intent to utilize MES's reputation and societal status. Delarosa Ana, under pressure from the Plaintiff, emphasized "I thought when I seen that, that you 2 were working together. Because I truly didn't want to post it" (see **Defense Exhibit G3**).

18.     In addition to paragraph 17, In accordance with FRCP Rule 8 (c)(1) Fraud, and FRCP Rule 9 (b) Fraud, whereby, the Plaintiff knowingly, willingly, and purposely deceived this court with the prerogative of the Defendant defaming Plaintiff to Plaintiff's family and friends. Again, Plaintiff claimed Defendant contacted Maris Nimmons on August 23, 2018, on the contrary, in **Defense Exhibit H**, depicts Maris initiating the communication with the Defendant at 3:50pm on August 23rd, 2018.

19.     Furthermore, lastly to paragraph 17, In accordance with FRCP Rule 8 (c)(1) Fraud, and FRCP Rule 9 (b) Fraud, whereby, the Plaintiff knowingly, willingly, and purposely deceived this court with the prerogative of the Defendant defaming Plaintiff to Plaintiff's family and friends. Plaintiff fabricated an account of the Defendant emailing Clifton Bell (hereinafter CB) to denigrate Plaintiff. CB, although a friend of the Plaintiff, had a verbal agreement with Defendant on working together to construct a project for Cisero Sr. CB specifically did video production work which was covered under the contracts signed by willing participants (see **Defense Exhibits B1 to B5**). The court should note CB signed as being witness to the contract between Defendant and Associate (see **Defense Exhibit B3**). Defendant sent CB a professional courtesy communication (see **Defense Exhibit I**) to inform CB of the new changes regarding Plaintiff status as associated with MES and presenting CB the opportunity, should CB choose, to continue to work with MES on Cisero Sr. project. CB, to date, has not replied to Defendant correspondence.

## Defense of Plaintiff Count 1

20.    The Defendant **denies all** allegations and **objection to Plaintiff requested relief** in Plaintiff Complaint, **Count 1, Paragraphs 121 to 130**.  In accordance with FRCP Rule 8 (c)(1) Fraud and Statue of Frauds, FRCP Rule 9 (b) Fraud, FRCP Rule 9 (c) Official Document or Act, and FRCP Rule 12 (b)(6) failure to state a claim upon which relief can be granted, Plaintiff knowingly, willingly, and purposely deceived this court with deliberate omissions of facts and/or evidence that would give this court clear and precise knowledge to make a justified decision as it surrounds Plaintiff's long-term knowledge of Defendant's U.S. Copyrighted work even through three different legal advisors/law firms, Plaintiff's contractual agreements with Defendant, and Plaintiff's forged documentation to coincide with false accounts of the truth.  Upon this court decision to grant Defense Motion to Strike Paragraphs within Plaintiff Complaint and in conjunction with Defense Case, Plaintiff would not have a valid claim.

## Defense of Plaintiff Count 2

21.    The Defendant **denies all** allegations and **objection to Plaintiff requested relief** in Plaintiff Complaint, **Count 2, Paragraphs 131 to 141**.  In accordance with FRCP Rule 8 (c)(1) Fraud and Statue of Frauds, FRCP Rule 9 (b) Fraud, FRCP Rule 9 (c) Official Document or Act, and FRCP Rule 12 (b)(6) failure to state a claim upon which relief can be granted, Plaintiff knowingly, willingly, and purposely deceived this court with deliberate omissions of facts and/or evidence that would give this court clear and precise knowledge to make a justified decision.  In accordance with FRCP Rule 12 (f)(2), Defense Motion to Strike Count 2 Paragraphs 131 to 141 of Plaintiff Complaint on grounds of redundant and scandalous matter.

## Defense of Plaintiff Count 3

22.     The Defendant **denies all** allegations and **objection to Plaintiff requested relief** in Plaintiff Complaint, **Count 3, Paragraphs 142 to 147**.  In accordance with FRCP Rule 8 (c)(1) Fraud and Statue of Frauds, FRCP Rule 9 (b) Fraud, FRCP Rule 9 (c) Official Document or Act, and FRCP Rule 12 (b)(6) failure to state a claim upon which relief can be granted, Plaintiff knowingly, willingly, and purposely deceived this court with deliberate omissions of facts and/or evidence that would give this court clear and precise knowledge to make a justified decision.  In accordance with FRCP Rule 12 (f)(2), Defense Motion to Strike Count 3 Paragraphs 142 to 147 of Plaintiff Complaint on grounds of redundant and scandalous matter.

<u>**Defense of Plaintiff Count 4**</u>

23.     The Defendant **denies all** allegations and **objection to Plaintiff requested relief** in Plaintiff Complaint, **Count 4, Paragraphs 148 to 154**.  In accordance with FRCP Rule 8 (c)(1) Fraud and Statue of Frauds, FRCP Rule 9 (b) Fraud, FRCP Rule 9 (c) Official Document or Act, and FRCP Rule 12 (b)(6) failure to state a claim upon which relief can be granted, Plaintiff knowingly, willingly, and purposely deceived this court with deliberate omissions of facts and/or evidence that would give this court clear and precise knowledge to make a justified decision. Plaintiff repeated refractory regarding his meritless claim against the Defendant has only proven two facets: three certified law firms refused to represent Plaintiff in this frolicsome claim, thus, the reason Plaintiff filed Pro Se, and Plaintiff is wasting this court time and resources to hear this frivolous claim that the Plaintiff perjured himself to filed as evident in **Defense Case, Paragraphs 4 to 11, and 17 to 19**.  Plaintiff signed a sworn Verification on May 26th, 2020 affirming this complaint was accurate knowing he deceived this court with premeditated omissions and false accounts.  In accordance with FRCP Rule 12 (f)(2), Defense Motion to

Strike Count 4 Paragraphs 148 to 154 of Plaintiff Complaint on grounds of redundant and scandalous matter.

<u>**Defense of Plaintiff Count 5**</u>

24.     The Defendant **denies all** allegations and **objection to Plaintiff requested relief** in Plaintiff Complaint, **Count 5, Paragraphs 155 to 161**.  In accordance with FRCP Rule 8 (c)(1) Fraud and Statue of Frauds, FRCP Rule 9 (b) Fraud, FRCP Rule 9 (c) Official Document or Act, and FRCP Rule 12 (b)(6) failure to state a claim upon which relief can be granted, Plaintiff knowingly, willingly, and purposely deceived this court with premeditated omissions of facts and/or evidence that would give this court clear and precise knowledge to make a justified decision.  In accordance with FRCP Rule 12 (f)(2), Defense Motion to Strike Count 5 Paragraphs 155 to 161 of Plaintiff Complaint on grounds of redundant and scandalous matter.

<u>**Defense of Plaintiff Count 6**</u>

25.     The Defendant **denies all** allegations and **objection to Plaintiff requested relief** in Plaintiff Complaint, **Count 6, Paragraphs 162 to 167**.  In accordance with FRCP Rule 8 (c)(1) Fraud and Statue of Frauds, FRCP Rule 9 (b) Fraud, FRCP Rule 9 (c) Official Document or Act, and FRCP Rule 12 (b)(6) failure to state a claim upon which relief can be granted, Plaintiff knowingly, willingly, and purposely deceived this court with premeditated omissions of facts and/or evidence that would give this court clear and precise knowledge to make a justified decision.  In accordance with FRCP Rule 12 (f)(2), Defense Motion to Strike Count 6 Paragraphs 162 to 167 of Plaintiff Complaint on grounds of redundant and scandalous matter.

<u>**Defense of Plaintiff Prayer for Relief**</u>

26.     The Defendant **denies all** allegations and **objection to Plaintiff requested relief** in Plaintiff Complaint, **Prayer for Relief, Paragraphs 1 to 11**.  In accordance with FRCP Rule 8

(c)(1) Fraud and Statue of Frauds, FRCP Rule 9 (b) Fraud, FRCP Rule 9 (c) Official Document or Act, and FRCP Rule 12 (b)(6) failure to state a claim upon which relief can be granted, Plaintiff knowingly, willingly, and purposely deceived this court with premeditated omissions of facts and/or evidence that would give this court clear and precise knowledge to make a justified decision. In accordance with FRCP Rule 12 (f)(2), Defense Motion to Strike Prayer for Relief Paragraphs 1 to 11 of Plaintiff Complaint on grounds of redundant and scandalous matter.

### Defense Counterclaim Against Plaintiff

27.     **COUNTERCLAIM 1**, In accordance with FRCP Rule 13 (a)(1)(A), Plaintiff is in violation by which Plaintiff knowingly, willingly, and purposely violated 17 U.S.C. Sections 501, 506 (a)(3)(B)(ii), and 18 U.S.C. Section 2319 on June 15, 2017 when Plaintiff falsely filed Defendant's U. S. Copyrighted literary work entitled Big City Nights: The Autobiography of the Legendary Cisero Murphy (see **Defense Exhibit C**) as Plaintiff's work under the title Big City Knights The Biography of: Cisero "Sonny" Murphy A World Class Champion (see **Plaintiff Exhibit B**). Plaintiff, on or around March 27th, 2019, used this copyright infringement to broker an entertainment movie deal with Jason Lee, Yvonne Lee, Matthew Socari of Lagralane Group LLC and Camille West, R. Blake West of United Film House (see **Defense Exhibits J1 to J5**), as it was advertised on Variety Website, Blake West, Jason Lee, and Yvonne Lee's Instagram social media pages.

28.     **COUNTERCLAIM 2**, In accordance with FRCP Rule 13 (a)(1)(A), Plaintiff is in violation by which Plaintiff knowingly, willingly, and purposely violated 17 U.S.C. Sections 501, 506 (a)(3)(B)(ii), and 18 U.S.C. Section 2319 on July 3, 2017 when Plaintiff falsely filed Defendant's U. S. Copyrighted literary work entitled Big City Nights: The Autobiography of the Legendary Cisero Murphy (see **Defense Exhibit C**) as Plaintiff's work under the title Big City

Nights (see **Plaintiff Exhibit C**). Plaintiff, on or around March 27th, 2019, used this copyright infringement to broker an entertainment movie deal with Jason Lee, Yvonne Lee, Matthew Socari of Lagralane Group LLC and Camille West, R. Blake West of United Film House (see **Defense Exhibits J1 to J5**), as it was advertised on Variety Website, Blake West, Jason Lee, and Yvonne Lee's Instagram social media pages.

29.     **COUNTERCLAIM 3**, In accordance with FRCP Rule 13 (a)(1)(A), Plaintiff is in violation by which Plaintiff knowingly, willingly, and purposely violated 17 U.S.C. Sections 501, 506 (a)(3)(B)(ii), and 18 U.S.C. Section 2319 on August 27, 2018 when Plaintiff falsely filed Defendant's U. S. Copyrighted literary work entitled Big City Nights: The Autobiography of the Legendary Cisero Murphy (see **Defense Exhibit C**) as Plaintiff's work  under the title First Born: Being the first born of the champ wasn't easy, with Registration Number: TXu002113616. Plaintiff, on or around March 27th, 2019, used this copyright infringement to broker an entertainment movie deal with Jason Lee, Yvonne Lee, Matthew Socari of Lagralane Group LLC and Camille West, R. Blake West of United Film House (see **Defense Exhibits J1 to J5**), as it was advertised on Variety Website, Blake West, Jason Lee, and Yvonne Lee's Instagram social media pages. Plaintiff currently has this infringing work for sale, distribution, reproduction, and display on Amazon website at the following link:

https://www.amazon.com/First-Born-Being-Champ-Wasnt/dp/1090874774

30.     **COUNTERCLAIM 4**, In accordance with FRCP Rule 13 (c), The Defendant is seeking the maximum relief, demand, or order in accordance with 15 U.S.C. Section 512 and 17 U.S.C. Sections 502 (a), 503 (a)(1)(A), 504 (a)(1)(2), and 505 as a result by which Plaintiff knowingly, willingly, and purposely violated 17 U.S.C. Sections 501, 506 (a)(3)(B)(ii), and 18 U.S.C. Section 2319 as depicted in Paragraphs 27 to 29.

31.    **COUNTERCLAIM 5**, In accordance with FRCP Rule 8 (c)(1), FRCP Rule 9 (b)(c)(d), and FRCP Rule 13 (a)(1)(A) Plaintiff is in violation by which Plaintiff knowingly, willingly, and purposely breached contract, as stipulated in **Plaintiff Exhibit A, paragraph 1**, to broker an entertainment movie deal illegally utilizing Defendant U.S. Copyrighted Work, as detailed in Paragraphs 27 to 29.

32.    **COUNTERCLAIM 6**, In accordance with FRCP Rule 13 (c), The Defendant is seeking this court to demand or order the Plaintiff to pay the amount of $6,000,000 as compensation for the Breach of Contract. Additionally, Defendant is seeking the maximum relief, demand, or order in accordance with 17 U.S.C. Sections 502 (a), 503 (a)(1)(A), 504 (a)(1)(2), and 505 as a result by which Plaintiff knowingly, willingly, and purposely violated 17 U.S.C. Sections 501, 506 (a)(3)(B)(ii), and 18 U.S.C. Section 2319 as depicted in Paragraphs 27 to 29.

33.    **COUNTERCLAIM 7**, In accordance with FRCP Rule 13 (b) Plaintiff is in violation by which Plaintiff knowingly, willingly, and purposely inflicted Harassment and Defamation of Defendant and MES. In which Plaintiff repeatedly had multiple law firms, over the course of several years, engage Defendant and MES on frivolous allegations of violating State and Federal Civil and Criminal Procedures, as stipulated in **Plaintiff Exhibit H, J, L, and M**. Additionally, Plaintiff, around September 2017, defamed Defendant and MES to Nate Bryant in a phone communication. Bryant agreed to provide an affidavit and/or testimony if needed. In a second instance, before or on August 28th, 2018, Plaintiff incited David Sapolis, Cisero Sr. mentee and once in good standing with Defendant, to harass and/or threaten to defame Defendant and/or MES if Defendant did not "mend the bridge with [Plaintiff]" (see **Defense Exhibit K1 to K7**).

34.    **COUNTERCLAIM 8**, In accordance with FRCP Rule 13 (c), The Defendant is seeking this court to demand or order the Plaintiff to pay the amount of $10,000,000 as compensation for

the Harassment and Defamation the Defendant and MES has endured due to Plaintiff's malicious sumpsimus.

## DEFENSE CLOSING STATEMENT

35.     The Plaintiff Complaint imploded, on the Federal level, May 26th, 2020 when Plaintiff perjured himself by signing a Verification of this complaint.  Plaintiff attempts to mammock established facts and/or evidence, by Plaintiff own submitted exhibits, to support an egregious and felonious claim which severely demonstrates Plaintiff refractory and cupidity.  Plaintiff told this court, he was working on a project regarding Cisero Sr., but, outside of the fraudulent copyrights filed by Plaintiff that the propinquity cannot be debated, fail to produce a single form of proof to support the declaration and simultaneously confirmed the Defendant claim of being the originator by submitting MES documents as Plaintiff Exhibits. (see **Plaintiff Exhibits A, D, E, F, and G**), which is in respect to Plaintiff claim of copyright infringement, whereby, Plaintiff knew Defendant was authoring Cisero Sr. book (see **Defense Exhibits B1 to B5**).  Defendant protected his literary piece with the U.S. Copyright Office (see **Defense Exhibit C**).  Plaintiff was unaware Defendant filed, Defendant's literary work officially and Plaintiff presumed Defendant literature was still unprotected, thus giving Plaintiff the eagerness to steal and fraudulently file Defendant's work as Plaintiff's own.

36.     Plaintiff perjured himself, on May 26th, 2020, by asserting co-ownership of MES in a premeditated fictious megillah which resulted in no viable supporting documentation to this court.  However, Plaintiff did confirm Defendant stance regarding Plaintiff status as **not,** or a **non**-business partner and Plaintiff being allowed under MES with uncompensated restricted access as depicted in four MES documents (see **Plaintiff Exhibits A, E, F, and G**).  These

documents in conjunction with **Defense Exhibit A** solidify to this court who is the true sole owner of MES.

37.      Plaintiff, for the third instance, perjured himself, on May 26th, 2020 to this court when Plaintiff declared defamation by Defendant to Plaintiff's friends and family.  Plaintiff knowingly attested to false accounts of events by stating Defendant contacted Maris Nimmons to denigrate Plaintiff, in which **Defense Exhibit H** depicts, clearly, Maris Nimmons making first contact. Plaintiff asserted Defendant defamed him to Clifton Bell in an email, in which the email correspondence **Defense Exhibit I** undoubtedly shows Defendant updating Clifton Bell on the changes within MES and why, as well as giving him the opportunity to continue to work with Defendant on Cisero Sr. project.  Plaintiff emphasized the Defendant contacted Anna Garcia to vilify Plaintiff, in which **Defense Exhibit G1 to G4** demonstrates Anna Garcia sought out communication with the Defendant, under the directive of Plaintiff, to get the Defendant to approve an advertisement for an organization led by Plaintiff on Defendant's MES social media page.

38.      To summarize, Plaintiff has shown a devious pattern of deliberate deception to get this court to rule in Plaintiff favor.  Whether Perjury or omissions, Plaintiff's cupidity knows no boundaries, by which Plaintiff knowingly, willingly, and purposely deceived this court with premeditated omissions of truths and/or evidence that would give this court clear and precise knowledge to make a justified decision.  In view of the inadequate Plaintiff Complaint while in conjunction with Defense Case, and in accordance with FRCP Rule 8 (c)(1) Fraud and Statue of Frauds, FRCP Rule 9 (b) Fraud, FRCP Rule 9 (c) Official Document or Act, and FRCP Rule 12 (b)(6) failure to state a claim upon which relief can be granted, and FRCP Rule 12 (f)(2), Defense Motion to Strike Plaintiff Complaint in its entirety on grounds of redundant, immaterial,

and scandalous matter, furthermore, in accordance to FRCP Rule 12 (c), Defense request Motion

to Dismiss Plaintiff Complaint.

Dated: 5/7/21 .
Brooklyn, New York

Tyriek A. Murphy

*Defense Exhibit A*

N.Y.S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS AND STATE RECORDS          ALBANY, NY 12231-0001

ONLINE FILING RECEIPT
================================================================================

ENTITY NAME: MURPHY ENTERPRISE SOLUTIONS LLC

DOCUMENT TYPE: ARTICLES OF ORGANIZATION (DOM. LLC)          COUNTY: KING
================================================================================

FILED:06/20/2016 DURATION:********** CASH#:160620010250 FILE#:160620010250
                         DOS ID:4965617

    FILER:                                          EXIST DATE
    ------                                          ----------
    EDWARD STAHLIN                                   06/20/2016
    315 W HURON ST STE 240
    ANN ARBOR, MI 48103

    ADDRESS FOR PROCESS:
    --------------------
    TYRIEK MURPHY
    78 HANCOCK ST
    BROOKLYN, NY 11216

    REGISTERED AGENT:
    -----------------



NEWSPAPER DESIGNATION
#1 BROOKLYN DAILY EAGLE
16 COURT STREET, 30th Floor
GINA ONG 718-643-9099 X 105
legals@brooklyneagle.com
#2

*PHoeniX*



FILED

SEP -9 2016

KINGS COUNTY CLERK'S OFFICE

    The limited liability company is required to file a Biennial Statement with the
    Department of State every two years pursuant to Limited Liability Company Law
    Section 301. Notification that the Biennial Statement is due will only be made via
    email. Please go to www.email.ebiennial.dos.ny.gov to provide an email address to
    receive an email notification when the Biennial Statement is due.
================================================================================
SERVICE COMPANY: ** NO SERVICE COMPANY **
SERVICE CODE: 00

FEE:          210.00                        PAYMENTS      210.00
              ----------                                  --------
FILING:       200.00                        CHARGE        210.00
TAX:            0.00                         DRAWDOWN        0.00
PLAIN COPY:     0.00
CERT COPY:     10.00
CERT OF EXIST:  0.00
================================================================================
                                            DOS-1025 (04/2007)

Authentication Number: 1606200255  To verify the authenticity of this document you
may access the Division of Corporation's Document Authentication Website at
http://ecorp.dos.ny.gov



# Murphy Enterprise Solutions

## Restricted Disclosure of Content / Release Authorization Form

In order to protect this entity's confidential information and/or permission for usage that may be disclosed and/or utilized by Murphy Enterprise Solutions, LLC, therein referred to as MES, of Employees, Volunteers, Clients, Contractors, and/or any other individual(s) not depicted within the mentioned, therein referred to as Associate. Effectively upon signature of this document, regardless whether in the presence of a public notary official or not, both parties concur to the following:

❖ The confidential information disclosed under this Agreement is described as any MES facts relating to business strategies/operations/projects, daily operations, and/or any other operational concept MES deem vital, whether past, present or future practices.

❖ The Associate shall use the confidential information received under this Agreement for the sole purpose of conducting any form of MES related or sponsored business.

❖ The Associate shall protect the disclosed confidential information by using a high degree of care, even more than a reasonable degree of care, to prevent the unauthorized use, dissemination, or publication of the confidential information as the Associate uses to protect its own confidential information of a like or less nature.

❖ The Associate has the sole duty to protect all confidential information which is (a.) disclosed by MES whether verbally and/or in writing, and marked as confidential at the time of disclosure. Or which is (b.) disclosed by MES in any other manner, is identified as confidential at the time of the disclosure, is also summarized and designated as confidential whether verbally and/or in a written memorandum delivered to the Associate within thirty (30) days of the disclosure.

❖ This Agreement imposes no obligation upon the Associate with respect to confidential information that becomes a matter of public knowledge through no fault of the Associate. However, shall be fully enforced if the Associate provides any additional vital information, regardless of their belief to its relevance, to benefit and/or support what has been publicly established.

❖ The Associate does not, whether past, present, and/or future instances, acquire intellectual property rights and/or any item deemed as intellectual property by MES under this Agreement. ONLY the Owner/Chief Executive Officer may give written permission to release intellectual property to the Associate. However, the Owner/Chief Executive Officer

Defense Exhibit B1

may, at any time, choose to withdraw the previous permission granted, whether verbally or in written documentation.

❖ I, the Associate, do hereby consent and agree that MES, its designates and/or agents, have the right to take photographs, videotape, audio and/or digital recordings of me, and may utilized these items in all MES facets, but not limited to media, entertainment, promotional, and/or other MES related business, now or hereafter known, and exclusively for the purpose of MES. I further consent that my name and/or identity may be revealed therein or by descriptive text or commentary.

❖ I do hereby release to MES, all rights to exhibit this work in print and/or electronic form publicly and/or privately to market and/or sell copies. I waive any rights, claims, and/or interest I may have to control the use of my identity and/or likeness in whatever operational direction MES intends to utilize and/or proceed.

❖ I understand there will be no other remuneration for materials gathered of me, either for the initial and/or subsequent transmission(s) and/or playback(s).

❖ I further acknowledge MES is not responsible for any expense(s) and/or liability incurred as a result of my participation in any material gathered regarding myself (including health, medical, travel, social, and/or any items not mentioned).

❖ I affirm to be 18 years of age or older, have read and fully interpret the foregoing statement, and competent to execute the terms within this agreement.

❖ MES makes no representation or warranty that any product and/or business plans disclosed and/or gathered to and/or of the Associate. Any actions taken by the Associate in response to the disclosure of confidential and/or gathered information by MES shall be solely at its risk. Furthermore, the Associate is aware if any litigation is warranted due to any violation and/or disregard of any portion of this agreement will result in the Associate being economically responsible for any expenses as well as legal fees. The Associate acknowledges and agrees that the confidential information is provided on an US 3S or NEED TO KNOW basis.

❖ Upon MES request, the Associate shall return to MES all material(s) and/or intellectual properties, in which, the Associate shall deliver to MES a written statement signed and notarized by the Associate certifying the completion of the task and done so within 5 days.

❖ The parties, MES and Associate, do not intend to form any agency and/or partnership relationship between them by simultaneously concurring to this Agreement.

❖ All additions and/or modifications to this Agreement must be made in writing and must be signed by both parties.

Defense Exhibit 181

*Defense Exhibit 13*

❖ This Agreement is made under and shall be construed according to the laws of the State of New York and/or State(s) MES may operate within.

Associate Signature: _Joseph Armstrong_    Witness Signature: _____

Associate Name: _JOSEPH ArmStrong_    Witness Name: _____

Date: _7/18/16_    Date: _____

MES Signature: _Tyriek Murphy_

MES Name: _Tyriek Murphy_

Date: _7/18/16_

Notary space below, if applicable:

Defense Exhibit B2

 *Murphy Enterprise Solutions*

## *Restricted Disclosure of Content / Release Authorization Form*

*In order to protect this entity's confidential information and/or permission for usage that may be disclosed and/or utilized by Murphy Enterprise Solutions, LLC, therein referred to as MES, of Employees, Volunteers, Clients, Contractors, and/or any other individual(s) not depicted within the mentioned, therein referred to as Associate. Effectively upon signature of this document, regardless whether in the presence of a public notary official or not, both parties concur to the following:*

❖ *The confidential information disclosed under this Agreement is described as any MES facets relating to business strategies/operations/projects, daily operations, and/or any other operational concept MES deem vital, whether past, present or future practices.*

❖ *The Associate shall use the confidential information received under this Agreement for the sole purpose of conducting any form of MES related or sponsored business.*

❖ *The Associate shall protect the disclosed confidential information by using a high degree of care, even more than a reasonable degree of care, to prevent the unauthorized use, dissemination, or publication of the confidential information as the Associate uses to protect its own confidential information of a like or less nature.*

❖ *The Associate has the sole duty to protect all confidential information which is (a) disclosed by MES whether verbally and/or in writing, and marked as confidential at the time of disclosure. Or which is (b) disclosed by MES in any other manner, is identified as confidential at the time of the disclosure, is also summarized and designated as confidential whether verbally and/or in a written memorandum delivered to the Associate within thirty (30) days of the disclosure.*

❖ *This Agreement imposes no obligation upon the Associate with respect to confidential information that becomes a matter of public knowledge through no fault of the Associate. However, shall be fully enforced if the Associate provides any addition vital information, regardless of their belief to its relevance, to benefit and/or support what has been publicly established.*

❖ *The Associate does not, whether past, present, and/or future instances, acquire intellectual property rights and/or any item deemed as intellectual property by MES under this Agreement.  ONLY the Owner/Chief Executive Officer may give written permission to release intellectual property to the Associate.  However, the Owner/Chief Executive Officer*

may, at any time, choose to withdraw the previous permission granted, whether verbally or in written documentation.

* ❖ 3, the Associate, do hereby consent and agree that MES, its designates and/or agents have the right to take photographs, videotape, audio and/or digital recordings of me, and may utilized these items in all MES facets, but not limited to media, entertainment, promotional, and/or other MES related business, now or hereafter known, and exclusively for the purpose of MES. I further consent that my name and/or identity may be revealed therein or by descriptive text or commentary.

* ❖ I do hereby release to MES, all rights to exhibit this work in print and/or electronic form publicly and/or privately to market and/or sell copies. I waive any rights, claims, and/or interest I may have to control the use of my identity and/or likeness in whatever operational direction MES intends to utilize and/or proceed.

* ❖ I understand there will be no other remuneration for materials gathered of me, either for the initial and/or subsequent transmission(s) and/or playback(s).

* ❖ I further acknowledge MES is not responsible for any expense(s) and/or liability incurred as a result of my participation in any material gathered regarding myself (including health, medical, travel, social, and/or any items not mentioned).

* ❖ I affirm to be 18 years of age or older, have read and fully interpret the foregoing statement, and competent to execute the terms within this agreement.

* ❖ MES makes no representation or warranty that any product and/or business plans conceived and/or gathered in and/or of the Associate. Any actions taken by the Associate in response to the disclosure of confidential and/or gathered information by MES shall be solely at its risk. Furthermore, the Associate is aware if any litigation is warranted due to any violation and/or disregard of any portion of this agreement will result in the Associate being economically responsible for any expenses as well as legal fees. The Associate acknowledges and agrees that the confidential information is provided on an US 7S or NEED TO KNOW basis.

* ❖ Upon MES request, the Associate shall return to MES all material(s) and/or intellectual properties, in which, the Associate shall deliver to MES a written statement signed and notarized by the Associate certifying the completion of the work and done so within 5 days.

* ❖ The parties, MES and Associate, do not intend to form any agency and/or partnership relationship between them by simultaneously concurring to this Agreement.

* ❖ All additions and/or modifications to this Agreement must be made in writing and must be signed by both parties.

Defense Exhibit 132

❖  This Agreement is made under and shall be construed according to the laws of the State of New York and/or State(s) MES may operate within.

Associate Signature: _Lee Bynum_    Witness Signature: _____

Associate Name: _LEE  BYNUM_    Witness Name: _____

Date: _7/19/2016_    Date: _____

MES Signature: _Tyriek Murphy_

MES Name: _Tyriek Murphy_

Date: _7/19/16_

Notary space below, if applicable:



## Murphy Enterprise Solutions

### Restricted Disclosure of Content / Release Authorization Form

In order to protect this entity's confidential information and/or permission for usage that may be disclosed and/or utilized by Murphy Enterprise Solutions, LLC, therein referred to as "MES," Employees, Volunteers, Clients, Contractors, and/or any other individual(s) not depicted within the mentioned, therein referred to as Associate. Effectively upon signature of this document, regardless whether in the presence of a public notary official or not, both parties concur to the following:

* ❖ The confidential information disclosed under this Agreement is described as any MES facets relating to business strategies/operations/projects, daily operations, and/or any other operational concept MES deem vital, whether past, present or future practices.

* ❖ The Associate shall use the confidential information received under this Agreement for the sole purpose of conducting any form of MES related or sponsored business.

* ❖ The Associate shall protect the disclosed confidential information by using a high degree of care, even more than a reasonable degree of care, to prevent the unauthorized use, dissemination, or publication of the confidential information as the Associate uses to protect its own confidential information of a like or less nature.

* ❖ The Associate has the sole duty to protect all confidential information which is (a.) disclosed by MES whether verbally and/or in writing, and marked as confidential at the time of disclosure. Or which is (b.) disclosed by MES in any other manner, is identified as confidential at the time of the disclosure, is also summarized and designated as confidential whether verbally and/or in a written memorandum delivered to the Associate within thirty (30) days of the disclosure.

* ❖ This Agreement imposes no obligation upon the Associate with respect to confidential information that becomes a matter of public knowledge through no fault of the Associate. However, shall be fully enforced if the Associate provides any addition that information, regardless of their belief to its relevance, to benefit and/or support what has been publicly established.

* ❖ The Associate does not, whether past, present, and/or future instances, acquire intellectual property rights and/or any item deemed as intellectual property by MES under this Agreement. ONLY the Owner/Chief Executive Officer may give written permission to release intellectual property to the Associate. However, the Owner/Chief Executive Officer

Defense Exhibit B3

written documentation.

may, at any time, choose to withdraw the previous permission granted, whether verbally or in written documentation.

❖ I, the Associate, do hereby consent and agree that MES, its designates and/or agents have the right to take photographs, videotape, audio and/or digital recordings of me, and may utilized these items in all MES facets, but not limited to media, entertainment, promotional, and/or other MES related business, now or hereafter known, and exclusively for the purpose of MES. I further consent that my name and/or identity may be revealed therein or by descriptive text or commentary.

❖ I do hereby release to MES, all rights to exhibit this work in print and/or electronic form publicly and/or privately to market and/or sell copies. I waive any rights, claims, and/or interest I may have to control the use of my identity and/or likeness in whatever operational direction MES intends to utilize and/or proceed.

❖ I understand there will be no other remuneration for materials gathered of me, either for the initial and/or subsequent transmission(s) and/or playback(s).

❖ I further acknowledge MES is not responsible for any expense(s) and/or liability incurred as a result of my participation in any material gathered regarding myself (including health, medical, travel, social, and/or any items not mentioned).

❖ I affirm to be 18 years of age or older, have read and fully interpret the foregoing statement, and competent to execute the terms within this agreement.

❖ MES makes no representation or warranty that any product and/or business plans disclosed and/or gathered to and/or of the Associate. Any actions taken by the Associate in response to the disclosure of confidential and/or gathered information by MES shall be solely at its risk. Furthermore, the Associate is aware if any litigation is warranted due to any violation and/or disregard of any portion of this agreement will result in the Associate being economically responsible for any expenses as well as legal fees. The Associate acknowledges and agrees that the confidential information is provided on an AS IS or NEED TO KNOW basis.

❖ Upon MES request, the Associate shall return to MES all material(s) and/or intellectual properties, in which, the Associate shall deliver to MES a written statement signed and notarized by the Associate certifying the completion of the task and done so within 5 days.

❖ The parties, MES and Associate, do not intend to form any agency and/or partnership relationship between them by simultaneously concurring to this Agreement.

❖ All additions and/or modifications to this Agreement must be made in writing and must be signed by both parties.

Defense Exhibit B3

*Defense Exhibit B3*

❖ This Agreement is made under and shall be construed according to the laws of the State of New York and/or State(s) MES may operate within.

Associate Signature: _William E. Shooter_    Witness Signature: _____

Associate Name: William F. Shooter    Witness Name: Clifton Bell

Date: 10/11/16    Date: _____

MES Signature: Tyriek Murphy

MES Name: Tyriek Murphy

Date: 10/11/16

Notary space below, if applicable:

# Murphy Enterprise Solutions

## Restricted Disclosure of Content / Release Authorization Form

In order to protect this entity's confidential information and/or permission for usage that may be disclosed and/or utilized by Murphy Enterprise Solutions, LLC, therein referred to as MES, Employees, Volunteers, Clients, Contractors, and/or any other individual(s) not depicted within the mentioned, therein referred to as Associate. Effectively upon signature of this document, regardless whether in the presence of a public notary official or not, both parties concur to the following:

❖ The confidential information disclosed under this Agreement is described as any MES facets relating to business strategies/operations/projects, daily operations, and/or any other operational concept MES deem vital, whether past, present or future practices.

❖ The Associate shall use the confidential information received under this Agreement for the sole purpose of conducting any form of MES related or sponsored business.

❖ The Associate shall protect the disclosed confidential information by using a high degree of care, even more than a reasonable degree of care, to prevent the unauthorized use, dissemination, or publication of the confidential information as the Associate uses to protect its own confidential information of a like or less nature.

❖ The Associate has the sole duty to protect all confidential information which is (a) disclosed by MES whether verbally and/or in writing, and marked as confidential at the time of disclosure. Or which is (b) disclosed by MES in any other manner, is identified as confidential at the time of the disclosure, is also summarized and designated as confidential whether verbally and/or in a written memorandum delivered to the Associate within thirty (30) days of the disclosure.

❖ This Agreement imposes no obligation upon the Associate with respect to confidential information that becomes a matter of public knowledge through no fault of the Associate. However, shall be fully enforced if the Associate provides any addition vital information, regardless of their belief to its relevance, to benefit and/or support what has been publicly established.

❖ The Associate does not, whether past, present, and/or future instances, acquire intellectual property rights and/or any item deemed as intellectual property by MES under this Agreement. ONLY, the Owner/Chief Executive Officer may give written permission to release intellectual property to the Associate. However, the Owner/Chief Executive Officer.



Defense Exhibit B4

may, at any time, choose to withdraw the previous permission granted, whether verbally or in written documentation.

❖ I, the Associate, do hereby consent and agree that MES, its designates and/or agents have the right to take photographs, videotape, audio and/or digital recordings of me, and may utilized these items in all MES facets, but not limited to media, entertainment, promotional, and/or other MES related business, now or hereafter known, and exclusively for the purpose of MES. I further consent that my name and/or identity may be revealed therein or by descriptive text or commentary.

❖ I do hereby release to MES, all rights to exhibit this work in print and/or electronic form publicly and/or privately to market and/or sell copies. I waive any rights, claims, and/or interest. I may have to control the use of my identity and/or likeness in whatever operational direction MES intends to utilize and/or proceed.

❖ I understand there will be no other remuneration for materials gathered of me, either for the initial and/or subsequent transmission(s) and/or playback(s).

❖ I further acknowledge MES is not responsible for any expense(s) and/or liability incurred as a result of my participation in any material gathered regarding myself (including health, medical, travel, social, and/or any items not mentioned).

❖ I affirm to be 18 years of age or older, have read and fully interpret the foregoing statement, and competent to execute the terms within this agreement.

❖ MES makes no representation or warranty that any product and/or business plans disclosed and/or gathered to and/or of the Associate. Any actions taken by the Associate in response to the disclosure of confidential and/or gathered information by MES shall be solely at its risk. Furthermore, the Associate is aware if any litigation is warranted due to any violation and/or disregard of any portion of this agreement will result in the Associate being economically responsible for any expenses as well as legal fees. The Associate acknowledges and agrees that the confidential information is provided on an AS IS or NEED TO KNOW basis.

❖ Upon MES request, the Associate shall return to MES all material(s) and/or intellectual properties, in which the Associate shall deliver to MES a written statement signed and notarized by the Associate certifying the completion of the task and done so within 5 days.

❖ The parties, MES and Associate, do not intend to form any agency and/or partnership relationship between them by simultaneously concurring to this Agreement.

❖ All additions and/or modifications to this Agreement must be made in writing and must be signed by both parties.

Defense Exhibit 134

*Defense Exhibit 151*

❖  This Agreement is made under and shall be construed according to the laws of the State of New York and/or State(s) MES may operate within.

Associate Signature: _James Thomas_   Witness Signature: _Denise Thomas_

Associate Name: _JAMES THOMAS_   Witness Name: _Denise Thomas_

Date: _____   Date: _____

MES Signature: _Tyriek Murphy_

MES Name: _Tyriek Murphy_

Date: _12/8/16_

Notary space below, if applicable:

*Defense Exhibit B5*

 *Murphy Enterprise Solutions*

## Restricted Disclosure of Content / Release Authorization Form

In order to protect this entity's confidential information and/or permission for usage that may be disclosed and/or utilized by Murphy Enterprise Solutions, LLC, therein referred to as MES, of Employees, Volunteers, Clients, Contractors, and/or any other individual(s) not depicted within the mentioned, therein referred to as Associate. Effectively upon signature of this document, regardless whether in the presence of a public notary official or not, both parties concur to the following:

❖ The confidential information disclosed under this Agreement is described as any MES facets relating to business strategies/operations/projects, daily operations, and/or any other operational concept MES deem vital, whether past, present or future practices.

❖ The Associate shall use the confidential information received under this Agreement for the sole purpose of conducting any form of MES related or sponsored business.

❖ The Associate shall protect the disclosed confidential information by using a high degree of care, even more than a reasonable degree of care, to prevent the unauthorized use, dissemination, or publication of the confidential information as the Associate uses to protect its own confidential information of a like or less nature.

❖ The Associate has the sole duty to protect all confidential information which is (a) disclosed by MES whether verbally and/or in writing, and marked as confidential at the time of disclosure. Or which is (b) disclosed by MES in any other manner, is identified as confidential at the time of the disclosure, is also summarized and designated as confidential whether verbally and/or in a written memorandum delivered to the Associate within thirty (30) days of the disclosure.

❖ This Agreement imposes no obligation upon the Associate with respect to confidential information that becomes a matter of public knowledge through no fault of the Associate. However, shall be fully enforced if the Associate provides any addition vital information, regardless of their belief to its relevance, to benefit and/or support what has been publicly established.

❖ The Associate does not, whether past, present, and/or future instances, acquire intellectual property rights and/or any item deemed as intellectual property by MES under this Agreement. *ONLY* the Owner/Chief Executive Officer may give written permission to release intellectual property to the Associate. However, the Owner/Chief Executive Officer

may, at any time, choose to withdraw the previous permission granted, whether verbally or in written documentation.

❖ I, the Associate, do hereby consent and agree that MES, its designates and/or agents have the right to take photographs, videotape, audio and/or digital recordings of me, and may utilized these items in all MES facets, but not limited to media, entertainment, promotional, and/or other MES related business, now or hereafter known, and exclusively for the purpose of MES. I further consent that my name and/or identity may be revealed therein or by descriptive text or commentary.

❖ I do hereby release to MES, all rights to exhibit this work in print and/or electronic form publicly and/or privately to market and/or sell copies. I waive any rights, claims, and/or interest I may have to control the use of my identity and/or likeness in whatever operational direction MES intends to utilize and/or proceed.

❖ I understand there will be no other remuneration for materials gathered of me, either for the initial and/or subsequent transmission(s) and/or playback(s).

❖ I further acknowledge MES is not responsible for any expense(s) and/or liability incurred as a result of my participation in any material gathered regarding myself (including health, medical, travel, social, and/or any items not mentioned).

❖ I affirm to be 18 years of age or older, have read and fully interpret the foregoing statement, and competent to execute the terms within this agreement.

❖ MES makes no representation or warranty that any product and/or business plans disclosed and/or gathered to and/or of the Associate. Any actions taken by the Associate in response to the disclosure of confidential and/or gathered information by MES shall be solely at its risk. Furthermore, the Associate is aware if any litigation is warranted due to any violation and/or disregard of any portion of this agreement will result in the Associate being economically responsible for any expenses as well as legal fees. The Associate acknowledges and agrees that the confidential information is provided on an as IS or NEED TO KNOW basis.

❖ Upon MES request, the Associate shall return to MES all material(s) and/or intellectual properties, in which the Associate shall deliver to MES a written statement signed and notarized by the Associate certifying the completion of the task and done so within 5 days.

❖ The parties, MES and Associate, do not intend to form any agency and/or partnership relationship between them by simultaneously concurring to this Agreement.

❖ All additions and/or modifications to this Agreement must be made in writing and must be signed by both parties.

Defense Exhibit 135

*Defense Exhibit 105*

❖ *This Agreement is made under and shall be construed according to the laws of the State of New York and/or State(s) MES may operate within.*

Associate Signature: *Christaler Kease*    Witness Signature: _____

Associate Name: *Christale Konsc*    Witness Name: _____

Date: *12-15-2016*    Date: _____

MES Signature: *Tyriek A. Murphy*

MES Name: *Tyriek A. Murphy*

Date: *12/15/16*

*Notary space below, if applicable:*



# Copyright
United States Copyright Office

The Library's catalogs are currently affected by performance issues. Staff are investigating the problem. We apologize for any inconvenience to our users.

| Help | Search | History | Titles | Start Over |

---

## Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Name = MURPHY TYRIEK
Search Results: Displaying 1 of 1 entries

◀ previous | next ▶

Labeled View

---

### Big City Nights: The Autobiography of The Legendary Cisero Murphy.

**Type of Work:** Text
**Registration Number / Date:** TXu002130697 / 2017-01-19
**Application Title:** Big City Nights: The Autobiography of The Legendary Cisero Murphy.
**Title:** Big City Nights: The Autobiography of The Legendary Cisero Murphy.
**Description:** Electronic file (eService)
**Copyright Claimant:** Tyriek A Murphy. Address: 2790 86 street, brooklyn, NY, 11223.
**Date of Creation:** 2016
**Authorship on Application:** Tyriek A Murphy; Citizenship: United States. Authorship: text, photographs, logo artwork.
**Pre-existing Material:** some photographs.
**Basis of Claim:** text, photographs, artwork.
**Rights and Permissions:** Tyriek A. Murphy, Murphy Enterprise Solutions LLC, P.O. Box 381177, Brooklyn, NY, 11238, ceo@murphyentsolutions.com
**Copyright Note:** C.O. correspondence.
**Names:** Murphy, Tyriek A

◀ previous | next ▶



| Save, Print and Email (Help Page) |
| Select Download Format Full Record ▾ | Format for Print/Save |
| Enter your email address: | Email |

---

Defense Exhibit D

Exhibit C

Tyriek A. Murphy
Co-Owner of
Murphy Enterprise Solutions
P.O. Box 381177 Brooklyn, NY 11238
(P) (347) 869 - 4396

October 11th 2016

Cisero K. Murphy, Jr.,
Co-Owner of
Murphy Enterprise Solutions
194-24 109th Avenue
Hollis, NY 11412
(P) (347) 528-3220

Dear Dad,

The reason why I asked you for your correct address yesterday is, because, I am going to start having some business cards and other stationary made with your name as co-owner of Murphy Enterprise Solutions – and Rachel was standing close by me at the time, and I didn't want her to know that we're doing business together (she still don't like you)!!! Anyway, our EIN is: 81-3045698. You know something dad, the way things are coming together, I feel like all the hard work and the money, that we put into this business (MES), is going to pay off soon – can I get an Amen!!! By the way, how is the book coming along? I like the name you picked (Big City Nights) that's better than the other two other names that I picked. When can I come back out to Emma's house to finish editing your book? I am hoping to finish editing your entire book real soon – so we could give it to my friend to publish. That way I could start working on the book I am going to write about you. So please hurry up with the big city nights – so I could start my book project about you. Dad, don't forget about the release authorization forms, we have to sign one for each other ok.

Genuinely,

Tyriek A. Murphy

*Defense Exhibit*
*E1*

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Daniel Angel
Partner
Direct: +1 212.351.2329
Fax: +1 212.351.6229
DAngel@gibsondunn.com

CONFIDENTIAL

July 3, 2018

<u>VIA UPS</u>

Murphy Enterprise Solutions LLC c/o Tyriek Murphy
2790 86th Street
Apt 4B
Brooklyn, NY 11223

Re:    Complaint Concerning *Big City Nights:  A Biography of the Legendary Cisero Murphy*

Dear Mr. Murphy:

I write on behalf of Cisero Murphy, Jr. ("Cisero Murphy"), sole author of *Big City Nights: A Biography of the Legendary Cisero Murphy* ("Big City Nights") and sole owner of its copyrights. *See* Copyright Reg. Nos. TXu002053010 and TXu002060114, attached hereto as Exhibit A and Exhibit B, respectively. As I am sure you are aware, Cisero Murphy registered these copyrights in *Big City Nights* with the U.S. Copyright Office on June 15, 2017 and July 3, 2017, respectively, and his copyrights in the title remain valid and enforceable.

It has come to our attention that you are attempting to profit off of Cisero Murphy's work by selling *Big City Nights* on, among other places, your websites, Booktopia, Barnes and Noble, eBay and Amazon at the following links:
- https://murphyentsolutions.com/
- http://www.murphnettifashions.mybigcommerce.com/big-city-nights-the-biography-of-the-legendary-cisero-murphy/
- https://www.booktopia.com.au/big-city-nights-mpa-tyriek-a-murphy/prod9781480947849.html
- https://www.barnesandnoble.com/w/big-city-nights-tyriek-a-murphy-mpa/1127202677?type=eBook
- https://www.ebay.com/p/Big-City-Nights-The-Biography-of-the-Legendary-Cisero-Murphy-by-Tyriek-A-Murphy-2017-Paperback/239661549
- https://www.amazon.com/Big-City-Nights-Biography-Legendary/dp/1480947849

The posting of *Big City Nights* for sale in such places is not authorized by Cisero Murphy, his agents, or the law. Accordingly, this conduct constitutes a violation of United States Copyright law. *See* 17 U.S.C. § 101, *et seq*. In particular, the Copyright Act provides that

GIBSON DUNN

*Defense Exhibit E2*

July 3, 2018
Page 2

Cisero Murphy has the "exclusive" right to authorize all reproductions of *Big City Nights*, to distribute copies of *Big City Nights*, and to publicly display *Big City Nights*. Id. § 106. This conduct violates all three of these exclusive rights, rendering you liable for copyright infringement under Section 501 of the Copyright Act, and subjecting you to injunctive relief, as well as potential liability for actual damages, disgorgement of profits, or statutory damages to be assessed by a court of competent jurisdiction. 17 U.S.C. §§ 502, 504. As demonstrated by evidence of your direct knowledge that Cisero Murphy Jr. was writing *Big City Nights* (*see* Exhibit C), there is no question that your unlawful infringement was willful, subjecting you to additional civil and criminal penalties. Cisero Murphy has undertaken significant investments in his intellectual property and takes your blatant violations of his copyright in *Big City Nights* extremely seriously.

Accordingly, on behalf of Cisero Murphy, we demand that you:

1.    Immediately take down *Big City Nights* from your website and cease all reproduction, sale, distribution and display of the work, pursuant to the Digital Millennium Copyright Act, 15 U.S.C. § 512;

2.    Provide an accounting of how many copies of *Big City Nights* were purchased via each venue and the price of each copy sold; and

3.    Compensate Cisero Murphy for the injuries he has already suffered and any profits you have unlawfully obtained from your unauthorized use of his work.

At a minimum, we believe that it would be appropriate for you to pay $750, representing the statutory minimum for damages caused by willful infringement (17 U.S.C. § 504), multiplied by the number of copies of *Big City Nights* that you have sold.

If you are prepared to cooperate, please sign the below acknowledgment and return a copy of this letter, along with an accounting of the copies sold, to me within ten days. Should you fail to honor these demands, we are prepared to take appropriate steps to protect and enforce Cisero Murphy's rights, including, but not limited to, seeking the maximum amount of damages allowable under the Copyright Act, injunctive relief, costs, attorneys' fees, and other remedies available at law.

The information in this notification is accurate, and, under penalty of perjury, I am authorized to act on behalf of Cisero Murphy, the owner of the copyright that is being infringed. This letter is not intended to be a complete recitation of all relevant facts and is sent without prejudice to any of Cisero Murphy's rights, all of which are expressly reserved.

GIBSON DUNN

*Defense Exhibit E 3*

July 3, 2018
Page 3

Sincerely,

Daniel Angel

ACKNOWLEDGMENT:

I agree immediately to cease and desist from any further reproduction, distribution or display of *Big City Nights: A Biography of the Legendary Cisero Murphy* (Copyright Reg. Nos. TXu002053010 and TXu002060114). I agree to take all steps necessary to remedy my unauthorized reproduction, distribution, and display of this work, including but not limited to:
(1) removing this work from the website associated with Murphy Enterprise Solutions LLC;
(2) providing an accounting of all sales of this work; and
(3) providing appropriate compensation to its owner, Cisero Murphy.

Agreed to and accepted by:

_____          _____

Signature                                 Date

Name: Tyriek Murphy



2:01 79%

Cisero Murphy
3475283220

Monday, May 8, 2017

C I'm on the block r u home ??? 12:00 PM

12:01 PM No

C R u back on the job ??? 12:02 PM

12:03 PM No

😂😂... you gave me a hell of a speech about "Trust" and/or "how you trust me".....

Yet I'm trying to figure out, why you didn't tell me about Dave telling you he could get the ball rolling on 1 of those honors, I learned from NBC, regarding getting a ceremony done for the straight pool hall of fame?

View all

12:15 PM

Better yet, exactly how much time were you planning on letting go by before you reveal to me you printed out Big City Nights... & carrying it around in your black personal planner, on the left hand side, face down, in a black & clear plastic cover booklet case????? (Providing nothing has changed)

S

View all

Defense Exhibit F1

### Me
12:15 PM, May 8

😅😅... you gave me a hell of a speech about "Trust" and/or "how you trust me".....

Yet I'm trying to figure out, why you didn't tell me about Dave telling you he could get the ball rolling on 1 of those honors, I learned from NBC, regarding getting a ceremony done for the straight pool hall of fame????

Defense
Exhibit
F2

Copy text      Share      More

**Me**

12:31 PM, May 8

Better yet, exactly how much time were you planning on letting go by before you reveal to me you printed out Big City Nights... & carrying it around in your black personal planner, on the left hand side, face down, in a black & clear plastic cover booklet case????? (Providing nothing has changed)

Sooooo, people supposed to believe that's your writing style, huh???

I've known for months, & was just waiting to see your intent. Why you think I kept asking you if you had anything to tell me or report & to my face, on the phone, and by text, you straight lied to me!!!

Defense
Exhibit
F 3

Copy text          Share          More

2:02 🖼    📶.ıll 79% 🔋

< **Cisero Murphy**
3475283220                    📞  📹  ⋮

on the left hand side, face down, in
a black & clear plastic cover booklet
case????? (Providing nothing has
changed)

S

**View all**                              >

12:31 PM

**C**  Okay, first of all, I did not print out
the book. And the black case you are
referring to, that's in my black carrying
case was some paperwork for my
court

case. Who ever told you that miss
spoke.
This is why you should have came
directly to me once you was given that
bullshit story.                    2:09 PM

**C**  Next, about Dave. Dave who ??? From
Taxes ??? If so what was we were
suppose to have done. Dave and I
never had a conversation like that !!!
Who is telling

you this bullshit ???    2:12 PM

**C**  As for the trust reference, I was
reaching out to you - it started off
with this issue with your. Then to you
being busy on the computer ignoring
calling or

not returning calls.    2:15 PM

**C**  I came to the block and I've called.

🖼  📷  +    |              😀  �503

|||        ◯        <

Defense
Exhibit
F 4



‹ **Cisero Murphy**
3475283220

📞 📹 ⋮

C  I came to the block and I've called. You was taking care of things with your job or this NBC position.

2:22 PM

C  But not once did you reach out to me by phone or by texting or by coming to the house.
All communication on your part just stop !!!  Why  ???  Was is because

you was listening to other people , instead of coming directly to me !!!

2:28 PM

C  I have nothing to hide from you !!!  I just never had the opportunity or chance to sit down with you - like we use to !!!

2:29 PM

Defense
Exhibit
F 5

I'll give it to you, you going with 1 story to the bitter end!!

We not going to go back & forth... nobody told me a bullshit story, I held the fuckin booklet in my hand & looked thru it.  Listen, don't worry about it!
You focus on what you doing & I'm going to focus on what I'm doing!!

2:30 PM

C  As I told you I been doing a lot of things on the personal side - but I'd been still working on the business- just like you have been.

2:31 PM

⌄

C  Let me tell you something, you

   +                     ‖⦚

|||        ◯        ‹

**Cisero Murphy**
3475283220

**C** Let me tell you something, you couldn't
Have hold the book in you hand because one has the book !!! So try again. Second of all, I understand now what you

book was then, and still isn't now, printed !!!! So all of that I held it in your hand is B/S !!!

might be referring to - but like I said I have nothing to hide. You just wasn't available. And I was taking care of a lot things. However, like I said the        3:00 PM

**C** So if you want to see what I have - my yourself like before. And I will be glad to show you what I showed Erica.        3:02 PM

**C** One more things Ty, you and I started that business together !!!! So what do you mean - when you said: " you do your thing and I'll do mine !!!"        3:06 PM

Tuesday, June 6, 2017

I was respectful because red was on the phone, don't insult my intelligence!! Do not have people, who don't normally reach out contact me for you!!

Nothing is changing, I'm going in a productive direction & you continue to do whatever you're doing like you ha without my knowledge!! So, NO WE

Defense
Exhibit
F6

Sprint      🛜 .⁣l 61% 🔋 6:58 PM

←   Timeline Review

 **Delarosa Ana** is with **Murphy EnterpriseSolutions**.

2 hrs · 🌐

Hello everyone my brother needs help to help the children, please is attached

Defense
Exhibit
G1

# Cisero "Sonny" Murphy Inc.



Greetings:

The Cisero "Sonny" Murphy Inc. is requesting your assistance and financial support in supplying Christmas gifts to the less fortunate families throughout the five boroughs of New York City.   Please do not send cash.  Please send all donations by check or money order to Cisero "Sonny" Murphy Inc., at:  P.O Box 310636, Jamaica New York 11431.

**Join us in putting a smile on a child's face this Christmas.**

Sincerely,
Cisero Murphy, Jr.
**Founder**
Email:  ciserom2511@yahoo.com



9:24 94%

Ana

NOV 28, 2018 AT 7:31 PM

What's up, auntie!

If it was something you were doing I would give the greenlight to post it.

However, it is something that your brother is doing, and most essentially something he has no business doing. He has my full attention now, and this business along with the business he's got under family name in Delaware will come to an end. Everything he's doing is based upon the work and momentum I have created. I will not allow anyone, especially my so called father, to think they can use me then when I protect myself they portray themselves as a victim.

I'm going to give family members the benefit because I know he gave them a full of shit story.

I have absolutely no regard for him and/or his shenanigans, thus the reason why there is no type of contact between us unless he tries to send another lawyer at

This person is unavailable on Messenger.

Defense Exhibit G2

 9:26 94%

Ana

So, I am sorry, I will not approve this post.

You can now message and call each other and see info like Active Status and when you've read messages.

Wow I didn't know, thanks for the heads up I thought when I seen that , that you 2 were working together. Because I truly didn't want to post it. I will try and take it down. I truly wish you the best and sorry we didn't spend time with you! I'm proud of you!!

Defense Exhibit G3

Yeah, nothing he is doing right now is legal. He is still collecting disability but trying to be a founder of an organization that doesn't even exist.... 🤔🤔

You and the rest of the family have to be careful with how you deal with him, I'm not falling fornhis B.S. that's why he running around making it look like my book was his and whatever else he saying to play the victim role when the fact is he is what he has always been a dam lair!

Got you and it's ... n! But i hope before he leaves this earth he

This person is unavailable on Messenger.

9:27 94%

Ana

doesn't even exist.... 😤😤

You and the rest of the family have to be careful with how you deal with him, I'm not falling fornhis B.S. that's why he running around making it look like my book was his and whatever else he saying to play the victim role when the fact is he is what he has always been a dam lair!

Defense Exhibit G4

Got you and it's down! But i hope before he leaves this earth he makes it right with you!

He not, and I'm not trying either.

I hear you; stay blessed and keep moving up!

Absolutely.....

I'm close to pitching the screenwrite of the book to Tyler Perry. 👏👏👏👏

👍

DEC 24, 2018 AT 4:43 PM

Ana forwarded a link

This person is unavailable on Messenger.

 **Maris**      

AUG 23, 2017 AT 3:50 PM

 yea! meant to call you and your dad to congratulate you both!

AUG 23, 2017 AT 4:02 PM

Yeah about that, we are not on speaking terms & I'm not sure what you've been led to believe but this is my book... however, thanks for the congrats!

 oh no 🥺 sorry to hear that, and no I haven't heard from your dad as yet either. haven't heard from him for a minute now.

That's how it is when you operating secretly & felonious. Last time I heard from him was thru his lawyers in June.

However, how my lil cousins doing??

 Again sorry to hear that. whatever it is you and your dad will get past it. that's what family do. The lol cuzns are doing well thanx for asking.

Nah, we, or rather, I'm completely

**Defense Exhibit H**

Aa

CEO_Murphy   09/07/2017 (01:38:09 PM EDT)

**2 Attachments**

Greetings Cliff,

It has been a while since our last communication, I hope all is well??
 Simultaneously, I want inform you of current matters imperative to the deliverance
of my grandfather's, Cisero S. Murphy (CS), legacy.

I regret to inform you, as of May 2017, Cisero K. Murphy, Jr. (CJ) is no longer
affiliated with Murphy Enterprise Solutions (MES).  This decision was based upon
numerous fictitious, felonious, and fraudulent transgressions over the course of
months by CJ which dramatically violated the image and integrity of MES.  To be
clear, CJ restricted access and/or connection within MES is terminated and _HE IS NOT
AN AUTHORIZED REPRESENTATIVE OF ANY MES AFFAIRS_.

Additionally, CJ does not have any official and/or unofficial operational foresight
of any project and so on related to CS.  CJ surrendered all his rights and/or claims
to MES in January 2017.  The attached files are the documents to support what has
been established and conveyed to you in this email.

Furthermore, it has come to my attention CJ has made malicious claims regarding MES
and/or myself as it pertains to the deliverance of CS project(s).  I, unlike him, am
not naive enough to think people will not utilize their common sense in putting the
facts together and be able to draw the accurate conclusion.  To be clear, although
you definitely have interacted with CJ longer than you have with myself, I am most
certain you can observe the difference when you have encountered or engaged us
together verses individually.

Lastly, I am sending this correspondence to officially say thank you for your insight
and work established should this be our final personal / professional transaction.
 Nothing stated in this email is without proof and/or knowledge of CJ and his 2
different attorneys he tried to use to withhold or hinder my progress, in which no
legal action has ever been taken against MES and/or myself.  Without hesitation, I
have no problems with you sharing this email and its content with CJ.  Again, unlike
him, I will not reach out to someone receive and/or distribute horrific information
than want the source giving or absorbing it to keep our interaction a secret.

Thanks again, Cliff!!


    /Genuinely,

Tyriek A. Murphy, MPA
Chief Executive Officer
Murphy Enterprise Solutions
P.O. Box 381177/
 /Brooklyn, NY 11238
(P)(347) 869 -4396

Defense
Exhibit
I

Delete    Reply...    More...

Defense
Exhibit
J1

**blakewest**
Sponsored

**VARIETY**

****

The Lagralane Group and United Film House have secured rights to the manuscript detailing the life of billiard champion Cisero Murphy, *Variety* has learned exclusively.

Visit Instagram Profile  ›

← **Post**

 **blakewest**
Hollywood



Defense
Exhibit
J2

**577 likes**

**blakewest** Very excited to finally announce this project we've been developing for several years now. Big things in the works with our partners @lagralane
Thankful that Cisero Murphy Jr @a.m._murphy has entrusted us with this story. His father's story is an epic one - he was a great man who made a great impact on the history of not only the sport of billiards but on racial

← **Comments** ⌁

 **blakewest** Very excited to finally announce this project we've been developing for several years now. Big things in the works with our partners @lagralane
Thankful that Cisero Murphy Jr @a.m._murphy has entrusted us with this story. His father's story is an epic one - he was a great man who made a great impact on the history of not only the sport of billiards but on racial relations in America. #civilrights #billiards #brooklyn #newyork #blackhistory #ciseromurphy @a.m._murphy @lagralane @camillelabrywest @yvonnehufflee @jdelanelee @mattsoraci

1d

**Defense Exhibit J3**

 **thejasontobias** Ayyyyyyeeee!!! CONGRATS 👏🎱❤️

1d    3 likes    Reply

 **nothinsacred** Woohoo! Congratulations! BIG Love to you guys!

1d    3 likes    Reply

 **amsounds** Hell yes! Congrats to you both! Loved this project from the moment you mentioned it.

1d    3 likes    Reply

 **edpko** 👏🙌🔥

1d    3 likes    Reply

       

 Add a comment...    Post

||| ◯ ‹

← **Posts**

 jdelanelee                              ⋮



♡  💬  ✈                                    🔖

**Defense Exhibit J4**

**52 likes**

jdelanelee **#ICYMI**: We recently secured the rights to the manuscript detailing the life of billiard champion Cisero Murphy! Excited to take on this project with **@unitedfilmhouse @camillelabrywest** and **@blakewest**.

.

.

.

 **@untold_stories___**

.

.

.

**#ciceromurphy #untoldstories #unitedfilmhouse #lagralane #billiard #billiardchampion #diversity #diversityinfilm #feature #film #filmmaking #filmfinancing #filmfinance #produce #producers #producing**

View all 2 comments

March 27, 2019



Defense
Exhibit
J 5



**38 likes**

**yvonnehufflee** #ICYMI: Our team, along with
@unitedfilmhouse @camillelabrywest and @blakewest,
have secured the rights to a project based on life of
billiard champion Cisero Murphy! .

.

.

.

📷@pinterest

.

.

.

#ciceromurphy #pinterest #unitedfilmhouse #lagralane
#billiard #billiardchampion #diversity #diversityinfilm
#feature #film #filmmaking #filmfinancing #filmfinance
#produce #producers #producing

View all 3 comments

March 28, 2019

    

|||    ◯    ‹



‹ **Dave Sapolis**
9153195639

Wednesday, August 29, 2018

> Morning Dave,
>
> It was brought to my attention, last night by my social media manager, that you left a comment saying "got something to say to me?" on a post I put up.
>
> Was that comment meant for me??
>
> If so, What's that comment about??....
>
> Because if I need or want to speak to you about something
>
> **View all**                                           ›

11:00 AM



Denfense
Exhibit
K 1

**D** Answer me one question - that's pretty much all I need is an answer to a question that I have. Who is being counterproductive and helping unauthorized individuals to undermine what is being established? I've stayed out of your situation regarding the issues concerning your father. I do that o

**View all**                             ›   MMS
11:28 AM

> First, I know where & what I say at all times. If have to address someone, its done just like this never through 3rd party or social media. There has never been any negative impact thrown my way because I do what I do with pure integrity.

## Me

11:00 AM, Aug 29

Morning Dave,

It was brought to my attention, last night by my social media manager, that you left a comment saying "got something to say to me?" on a post I put up.

Was that comment meant for me??

If so, What's that comment about??....

Because if I need or want to speak to you about something its done like this, via phone call and/or email as I have done in past communications!!

Defense Exhibit K2

Copy text     Share     More

< **Dave Sapolis**

11:28 AM, Aug 29

**(No subject)**

Answer me one question - that's pretty much all I need is an answer to a question that I have. Who is being counterproductive and helping unauthorized individuals to undermine what is being established? I've stayed out of your situation regarding the issues concerning your father. I do that out respect for your family and your grandfather's legacy - not wanting to drag his name into controversy or personal issues. You know where I stand - and I refuse to allow you or anybody else misrepresent your grandfather. You and only you have the power to mend the bridge with your father, and if you can't be man enough to make things right - then at least have the decency to not make things worse by insinuating crap on social media - and using your grandfather's legendary status as a platform to be resentful and spiteful. That behavior is childish and more counterproductive than anything else. If you cannot understand that, then you have no business representing anything - especially your grandfather. As far as communication - YOU posted that publicly on social media - and that's where I responded to you. If you have a problem with that, you only have yourself to blame for posting that comment. Do the right thing and you won't have to worry about getting called out for doing the opposite. If you call people out - expect them to stand up for themselves. That's what I did. If you're upset with me about that - not my problem.

Defense
Exhibit
K 3



Copy text          Share          More

‹ **Me**

12:14 PM, Aug 29

**(No subject)**

First, I know where & what I say at all times.  If have to address someone, its done just like this never through 3rd party or social media.  There has never been any negative impact thrown my way because I do what I do with pure integrity.

Second, I'm very aware of what's going on as it pertains to Cisero Jr.  & who's assisting him.  I, as well, have been more than gracious with not reacting to his antics.  No one, INCLUDING Cisero Jr., was really trying to depict my grandfather legacy until I made it a priority to do so during my graduate degree pursuit.  I'm very much sure he has told you some negative facets regarding me as he has with others (and I got the notarized letters to confirm).

Now, based upon the tone of your text, I am concluding you felt my post was a subliminal jab at you??..... if you feel some type of way about it, then that's something you have to deal with!!

Again, everything I have done to this point was something that should have been done decades ago by others, yourself (if you want to be included), Cisero Jr., and/or other actual family members but none did not!!  I find it rather intriguing how this HOF ceremony was setup behind my back and I had to find out the day before, in another state, while in the midst of a interview promoting my book regarding Cisero Sr.??.... how does that happen??

It's clear our vibe has changed, I'm ok with that, if you are, I told you that in the email I sent you

Defense Exhibit K 4

Copy text    Share    More

**Me**

12:14 PM, Aug 29

**(No subject)**

he has told you some negative facts regarding me as he has with others (and I got the notarized letters to confirm).

Now, based upon the tone of your text, I am concluding you felt my post was a subliminal jab at you??..... if you feel some type of way about it, then that's something you have to deal with!!

Again, everything I have done to this point was something that should have been done decades ago by others, yourself (if you want to be included), Cisero Jr., and/or other actual family members but none did not!! I find it rather intriguing how this HOF ceremony was setup behind my back and I had to find out the day before, in another state, while in the midst of a interview promoting my book regarding Cisero Sr.??.... how does that happen??

It's clear our vibe has changed, I'm ok with that, if you are, I told you that in the email I sent you & Cliff, that I'm not naïve to think you'll loyalty wouldn't be with Cisero Jr.  Actions speaks more than any words can!! I don't need to, nor have I ever, degraded anyone to get to this point... like I was always told, sit back, watch & listen, and over time you get to see people true intent or intentions!!

And, just so we clear, the HOF video tribute regarding my grandfather that you got emotional about, quite a few people, including me, felt more genuineness from the other 2 presenters than they from Cisero Jr.

*Defense Exhibit K5*


Copy text     Share     More

< Dave Sapolis 📞 📹 ⋮
9153195639

father. I do that o

View all > MMS
11:28 AM

First, I know where & what I say at all times. If have to address someone, its done just like this never through 3rd party or social media. There has never been any negative impact thrown my way because I do what I do with pure integrity.

Second, I'm very aware of what's going on as it pertains

MMS
12:14 PM

View all >

But, if at any point, you want to check my integrity??.... tell Cisero Jr. to show you the documentation!.... nothing like documentation!

12:15 PM

**Defense Exhibit K 6**

D Piss on documentation and all the legal bullshit. This was never intended to be a complicated situation. It was about two people who wanted to honor the legacy of a good man. Yes, my tone has changed. You created this entire situation yourself. I had no part in creating the tension or the le

View all > MMS
12:39 PM

D That being, don't respond to me in any other way except by fixing this situation. If you are unwilling to do that, then I have very little else to say.

🖼 📷 + | 😊 ꠸

# Dave Sapolis

12:39 PM, Aug 29

**(No subject)**

Piss on documentation and all the legal bullshit. This was never intended to be a complicated situation. It was about two people who wanted to honor the legacy of a good man. Yes, my tone has changed. You created this entire situation yourself. I had no part in creating the tension or the legal nonsense . You did that. Nice try on trying to deflect on me - just know that not everyone is going to kiss your ass or agree with everything you are doing. It is naive to believe that. You have all the talent, brains, and skill to do what you are trying to do without all of this other nonsense. All of that drama distracts from the main purpose - which is honoring your grandfather's legacy - not using it as a weapon. You may not view it that way - you can come at me with all of the legal mumbo jumbo - knock yourself out. This was never a complicated situation until you became involved - and to me, that speaks volumes. I always give people the chance to do the right thing - but in this situation doing the right thing is different depending on your perspective. I get that, but it doesn't change the fact that I dislike your methods and your disregard for how your actions may be interpreted or misinterpreted by others. There's no right way to do the wrong thing. It's sad that you don't understand that. So rock on with your corporation. Just remember, your grandfather would not approve of you treating his name or his legacy as your property. Add that fact to your documentation.

Defense Exhibit
)( 7

Copy text    Share    More


7018 1130 0001 6944 0926

# U.S. Postal Service™
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

Saint Albans, NY 11412

OFFICIAL USE

Certified Mail Fee $ $3.60

$2.85

Extra Services & Fees *(check box, add fee as appropriate)*

| | |
|---|---|
| ☐ Return Receipt (hardcopy) | $ $0.00 |
| ☐ Return Receipt (electronic) | $ $0.00 |
| ☐ Certified Mail Restricted Delivery | $ $0.00 |
| ☐ Adult Signature Required | $ $0.00 |
| ☐ Adult Signature Restricted Delivery | $ |

Postage $ $7.95

Total Postage and Fees $ $14.40

0354
10

Postmark Here

CADMAN PLAZA STATION
MAY -7 2021
USPS 11201

05/07/2021

*Sent To* Cisero K Murphy Jr

*Street and Apt. No., or PO Box No.* 194-24 109th Avenue

*City, State, ZIP+4®* Jamaica, NY 11412

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

**UNITED STATES POSTAL SERVICE.**

CADMAN PLAZA
271 CADMAN PLZ E STE 2
BROOKLYN, NY 11201-9997
(800)275-8777

05/07/2021                                    10:41 AM
------------------------------------------------

| Product | Qty | Unit Price | Price |
|---------|-----|-----------|-------|

------------------------------------------------

Priority Mail® 1-Day 1                         $7.95
Flat Rate Env
   Saint Albans, NY  11412
   Flat Rate
   Expected Delivery Date
    Sat 05/08/2021
  Certified Mail®                           $3.60
    Tracking #:
     70181130000169440926
  Return Receipt                            $2.85
    Tracking #:
     9590 9402 5446 9189 1995 82
Total                                          $14.40

------------------------------------------------

Grand Total:                                   $14.40

------------------------------------------------

Cash                                           $20.00
Change                                         -$5.60
------------------------------------------------

************************************************
USPS is experiencing unprecedented volume
increases and limited employee
availability due to the impacts of
COVID-19. We appreciate your patience