UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
CISERO K. MURPHY, JR.,                                       :
                                                             :
                                    Plaintiff,               :
                                                             :    MEMORANDUM & ORDER
        -against-                                            :
                                                             :    No. 20-CV-2388-JRC
TYRIEK A. MURPHY,                                            :
                                                             :
                                    Defendant.               :
----------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

On May 27, 2020, plaintiff Cisero K. Murphy, Jr. ("plaintiff") brought this action,

which is now pending before this Court with the consent of the parties, against his son,

defendant Tyriek A. Murphy ("defendant"), asserting claims for copyright infringement,

unjust enrichment, fraud, negligent misrepresentation, and conversion. *See* Compl., Dkt.

1. Currently pending before this Court are the parties' cross-motions for partial summary

judgment. Dkts. 58, 62. Plaintiff moves for partial summary judgment for a declaration

that he is the sole owner of the copyrights at issue and that defendant willfully infringed

plaintiff's copyright. *See* Mem. of Law in Support of Pl.'s Mot. for Partial Summ. J.

("Pl.'s Mem.") at 1, Dkt. 61. Defendant moves for partial summary judgment that

plaintiff is not entitled to an award of actual damages for copyright infringement, and that

plaintiff is not entitled to statutory damages or attorney's fees under the Copyright Act,

17 U.S.C. § 504(c)(1). *See* Def.'s Mem. of Law in Support of Mot. for Partial Summ. J.

("Def.'s Mem.") at 1-2, Dkt. 63.

For the reasons set forth below, the Court denies plaintiff's motion for partial

summary judgment, and grants defendant's motion for partial summary judgment.

## FACTUAL BACKGROUND

The Court describes the relevant factual background below primarily from the allegations in plaintiff's complaint (Compl., Dkt. 1), and the statements submitted by the parties pursuant to Local Civil Rule 56.1. *See* [Plaintiff's] Local Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1"), Dkt. 59; [Defendant's] Resp. to Cisero K. Murphy, Jr.'s Local Rule 56.1 Statement of Undisputed Facts ("Def.'s Resp. 56.1"), Dkt. 72; [Defendant's] Statement of Material Facts for Which There is No Genuine Issue to be Tried ("Def.'s 56.1"), Dkt. 66; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts, Dkt. 69. The facts described below are undisputed unless otherwise noted.

In his Complaint, plaintiff alleges that he researched and wrote a biography of his father, Cisero Murphy, Sr., a professional billiards player and the first African American to win world and U.S. national billiards championships. *See* Compl. at ¶ 1. Plaintiff alleges that before he "was able to publish or sell his father's biography, [defendant] stole . . . the manuscript out of [plaintiff's] car. . . and then publish[ed] and [sold] the work as his own creation." *Id.*

Cisero Murphy, Sr. died intestate, leaving a spouse, and four children, including plaintiff. *See* Pl.'s 56.1 ¶ 1. Defendant is plaintiff's son and Cisero Murphy, Sr.'s grandson. *See id.* ¶ 3. In 2013, plaintiff and Clifton Bell ("Bell") began conducting research and interviews about Cisero Murphy, Sr. *Id.* ¶ 58. Originally, Bell had intended to use the interviews for a movie. *Id.* ¶ 61. In early 2015, plaintiff told Bell that he had started to write a book about Cisero Murphy, Sr. *Id.* ¶ 62.

On January 19, 2017, defendant obtained Copyright Registration No. TXu002130697 for the written work entitled: "Big City Nights: The Autobiography of

2

The Legendary Cisero Murphy" (hereafter "defendant's Big City Nights"). *Id.* ¶ 8. Approximately five months later, on June 15, 2017, plaintiff obtained Copyright Registration No. TXu002053010 for the unpublished printed work entitled: "Big City Knights: The Biography of: Cisero 'Sonny' Murphy A World-Class Champion." *Id.* ¶ 5; Def.'s 56.1 ¶ 16. On July 3, 2017, plaintiff obtained Copyright Registration No. TXu002060114 for an unpublished electronic file, entitled: "Big City Nights."[1] Def.'s 56.1 ¶ 17.

Plaintiff is in possession of a 140-page handwritten manuscript of plaintiff's Big City Knights, which was written by his own hand. Pl.'s 56.1 ¶¶ 9-10. Throughout that manuscript, are defendant's handwritten edits or the word, "Done," which appear on 124 pages of the manuscript. *Id.* ¶ 11. The parties dispute the meaning of defendant's notations. *See* Def.'s Resp. 56.1 ¶ 12. Similarly, plaintiff has submitted several text messages between the parties, in which defendant appears to ask plaintiff about the progress of the book and when it will be finished. *See* Dkt. 60-35 at ECF pages 12, 15, 20, 22. Defendant disputes the meaning of those text messages. *See* Def.'s Resp. 56.1 ¶ 18.

Plaintiff has also submitted the affidavits of a number of non-party family members and family friends, averring that they witnessed plaintiff handwrite portions of a biography of Cisero Murphy, Sr., and that no one was dictating to plaintiff at the time. *See* Pl.'s 56.1 ¶¶ 19-20, 29-30, 33-34, 36, 39-41, 43-44, 47, 49, 50-51, 55. Some of those

---

[1] While plaintiff's June 15, 2017 and July 3, 2017 copyright registrations listed the work under different titles (*compare* "Big City Knights . . ." *with* "Big City Nights"), according to plaintiff the only difference between the two differently-titled works was "Big City Knights" did not include certain photographs contained in "Big City Nights." Def.'s 56.1 ¶ 18. For ease of reference, the Court will refer to both works registered on June 15 and July 3, 2017, collectively as "plaintiff's Big City Knights."

non-party witnesses also state that defendant specifically told them "that his role with the biography was proofreading [and] editing [plaintiff's] handwritten manuscript of the biography." *See, e.g., id.* ¶¶ 21, 32, 37, 42, 45, 48, 54. Defendant denies making these statements. *See* Def.'s Resp. 56.1 ¶¶ 21, 32, 37, 42, 45, 48, 54.

Defendant testified that he wrote defendant's Big City Nights on his computer and that he dictated a portion of the book to plaintiff, while defendant's computer was broken. *Id.* ¶ 66. Defendant further testified that plaintiff handwrote the pages that were dictated to plaintiff by defendant. *Id.* ¶ 68. According to defendant, plaintiff obtained defendant's typed manuscript and re-copied it by hand. *Id.* ¶ 70. Defendant further testified that he did not have any of the recorded interviews or notes of the interviews conducted for the Cisero Murphy, Sr. biography. *Id.* ¶¶ 71-72.

The parties dispute the authenticity of a "Forfeiture Contract" dated January 25, 2017. *Id.* ¶ 74. Defendant claims that plaintiff signed the Forfeiture Contract, assigning plaintiff's rights in plaintiff's Big City Knights and/or defendant's Big City Nights to Murphy Enterprise Solutions, LLC ("MES").[2] Def.'s Separate Statement of Material Facts[3] ¶ 3(c), Dkt. 72 at ECF pages 22-23. Plaintiff contends that the agreement is fraudulent. *See* Pl.'s 56.1 ¶ 74.

After defendant filed a copyright registration for defendant's Big City Nights with the U.S. Copyright Office, he engaged Dorrance Publishing Co., Inc. ("Dorrance") to assist with the process of publishing defendant's Big City Nights. Def.'s 56.1 ¶ 2. On or

---

[2] According to plaintiff, MES is a limited liability company for which plaintiff and defendant had agreed to be equal co-owners. *See* Compl. ¶ 21.

[3] Defendant's responsive 56.1 Statement includes a Separate Statement of Material Facts.

about March 7, 2017, defendant entered into an agreement with Dorrance, that Dorrance would perform services for defendant, including "publish[ing] [defendant's Big City Nights] for print and e-book distribution." *Id.* ¶ 3. Pursuant to that agreement, defendant paid Dorrance $5,900 for such services. *Id.* ¶¶ 4-5. The agreement also provided that defendant would "deliver to Dorrance, on or before [March 7, 2017], a copy of the completed Work [defendant's Big City Nights]." *Id.* ¶ 6. Indeed, it was Dorrance's practice to require receipt of a completed manuscript before entering into a publishing agreement with an author. *Id.* ¶ 7. Accordingly, on or before March 7, 2017, defendant provided to Dorrance a completed manuscript copy of defendant's Big City Nights. *Id.* ¶ 8. Between March 7, 2017 and August 31, 2017, copies of defendant's Big City Nights were distributed to multiple employees of Dorrance, and Dorrance sent to defendant copies of the edited manuscript, page design proofs, and cover design proofs. *Id.* ¶¶ 10-12. On May 16, 2017, Dorrance provided defendant with an edited copy of defendant's Big City Nights. *Id.* ¶ 12. On May 17, 2017, defendant approved Dorrance's edits. *Id.* On August 31, 2017, Dorrance published defendant's Big City Nights. *Id.* ¶ 13.

Plaintiff's Big City Knights was first published on September 17, 2021. *Id.* ¶ 21.

## PROCEDURAL BACKGROUND

On May 27, 2020, plaintiff, then-proceeding *pro se*, commenced this action. *See* Compl., Dkt. 1. On May 7, 2021, defendant, also then-proceeding *pro se*, filed a "pre-answer motion to dismiss," denying plaintiff's allegations, and asserting counterclaims for copyright infringement, breach of contract and "harassment and defamation." Pre-Answer Mot. to Dismiss, Dkt. 9. On June 8, 2021, plaintiff filed a "reply to the Defendant's answer." Dkt. 10.

5

Thereafter, plaintiff retained counsel.  Dkt. 17.  On November 30, 2021, the Honorable Ann M. Donnelly, the then-assigned District Judge, referred the case to the Court-annexed mediation program, and denied the motion to dismiss without prejudice to renewal if mediation failed.  *See* Orders dated November 30, 2021.

On March 11, 2022, the parties reported that mediation was unsuccessful, and, later that same day, defendant filed a motion for summary judgment.  *See* Report of Mediation Unsettled; Mot. for Summ. J., Dkt. 18.  On April 19, 2022, Judge Donnelly denied defendant's motion for summary judgment, stating that "[t]he parties have not engaged in discovery, and the defendant's motion for summary judgment does not include the required Rule 56.1 statement."  *See* Order dated Apr. 19, 2022.  The Court further noted that the "motion's section titled 'Undisputed Facts for Summary Judgment' primarily contain[ed] legal conclusions."  *Id*.

On April 25, 2022, defendant filed an "amended motion for summary judgment." Dkt. 19.  On May 3, 2022, Judge Donnelly denied defendant's second motion for summary judgment as premature because the parties had not yet engaged in discovery. *See* Mem. Decision and Order, Dkt. 21.

On May 11, 2022, defendant filed an Answer, including counterclaims, entitled "Defense Answer Motion to Dismiss."  Dkt. 22.  After seeking clarification from defendant, this Court informed the parties that it would construe Dkt. 22 as a "motion to dismiss."  *See* Min. Entry dated Oct. 12, 2022.  On February 28, 2023, this Court issued a report and recommendation that defendant's motion to dismiss on statute of limitations grounds be denied, which was subsequently adopted by the Honorable Hector Gonzalez, the District Judge who had been reassigned to the action.  *See* Dkts. 32, 35.

On March 2, 2023, defendant filed a third motion for summary judgment. *See* Dkt. 33. This Court denied defendant's motion, without prejudice, for failure to follow Judge Gonzalez's Individual Practices. *See* Min. Entry dated Mar. 7, 2023.

On June 9, 2023, the parties consented to the undersigned magistrate judge for all purposes. *See* Dkt. 37.

At a conference held on June 16, 2023, the Court advised the parties that it would likely deny their contemplated cross-motions for summary judgment "on the grounds that an issue of material fact exists in connection with the disputed authorship of the at-issue book." Min. Entry dated June 16, 2023. The Court further advised the parties that they would be granted leave to renew the motions during trial. *Id.*

On September 12, 2023, counsel appeared for the first time on behalf of defendant. *See* Dkts. 39, 40. At a conference held on September 21, 2023, the Court granted defendant's request to reopen discovery, affording defendant leave to conduct depositions, including the deposition of plaintiff. *See* Min. Entry dated Sept. 21, 2023. The Court also adjourned *sine die* the bench trial previously scheduled, on consent of the parties. *See id.* The instant motions followed.

## DISCUSSION

### I.  Standard under Rule 56 of the Federal Rules of Civil Procedure

Summary judgment is appropriate if the parties' submissions — including pleadings, deposition transcripts, affidavits, and other material in the record — show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant has the burden of demonstrating that no material fact is

genuinely in dispute. *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020). "A fact is material if it 'might affect the outcome of the suit under the governing law,'" and a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Summary judgment is appropriate only if "on the record presented, considered in the light most favorable to the non-moving party, no reasonable fact-finder could find in its favor." *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023) (alterations adopted) (quoting *Capobianco v. City of N.Y.*, 422 F.3d 47, 54-55 (2d Cir. 2005)). A court should not ask whether "the evidence unmistakably favors one side or the other but whether a fair-minded fact-finder could return a verdict for the non-moving party on the evidence presented." *Id.* (alterations adopted) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). To avoid summary judgment, all that is required of the non-moving party is a showing of sufficient evidence supporting the claimed factual dispute as to require a judge or jury's resolution of the parties' differing versions of the truth. *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006).

"Cross-motions for summary judgment do not alter the basic standard." *Basora v. City of Poughkeepsie*, No. 22-CV-3300, 2025 WL 50322, at *3 (S.D.N.Y. Jan. 8, 2025). Where, as here, the parties have cross-moved for summary judgment, the Court evaluates each party's motion "on its own merits," and draws all reasonable inferences "against the

party whose motion is under consideration." *Roberts*, 68 F.4th at 88 (quoting *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

Pursuant to Local Civil Rule 56.1, each moving party has submitted a statement of undisputed material facts warranting partial summary judgment, and the opposing party has submitted a corresponding statement responding to each item set forth in the movant's statement.  In addition, defendant has submitted a statement of additional material issues of fact that he contends are disputed.

## II.    Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment for a declaration that he is the owner of the copyrighted works and that defendant willfully violated plaintiff's copyrights.  *See* Pl.'s Mem. at 1.  Plaintiff contends that he "authored the content of [plaintiff's] Big City Knights, The Biography of:  Cisero 'Sonny' Murphy, A World Class Champion and [defendant's] Big City Nights:  The Biography of the Legendary Cisero Murphy."  *Id.* at 17.  He claims that defendant "made only superficial changes" to plaintiff's manuscript, such as changing the title and author's name, in passing off plaintiff's Big City Knights as defendant's Big City Nights.  *Id.* at 13.  In response, defendant argues that "there are a number of factual disputes as to the parties' respective involvement in authoring the works, including the parties' divergent stories regarding the nature of the writing process."  Def.'s Opp. at 5, Dkt. 70.

"In order to make out a claim of copyright infringement[,] a plaintiff must establish three things:  1) that his work is protected by a valid copyright, 2) that the defendant copied his work, and 3) that the copying was wrongful."[4]  *Zalewski v. Cicero*

---

[4] To satisfy the second element, plaintiff "must also show copying by defendants. . . . Copying may be inferred where a plaintiff [1] establishes that the defendant had access to the copyrighted work and [2] that

*Builder Dev., Inc.*, 754 F.3d 95, 100 (2d Cir. 2014); *see Hamil Am. Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) (plaintiff must show "both ownership of a copyright and unauthorized copying by the defendant"). On plaintiff's motion, only the first element of ownership is at issue.

The Copyright Act vests initial ownership in a work in the "author or authors of the work." 17 U.S.C. § 201(a). "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community For Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). In other words, "[a] person is not an author if he has an original idea that is not expressed in tangible form, and a person is not an author if he expresses another's idea in tangible form without any original contribution." *Medforms, Inc. v. Healthcare Mgmt. Sols., Inc.*, 290 F.3d 98, 107-08 (2d Cir. 2002). "Authorship is generally a question of fact for the jury." *Id.* at 110; *see Ward v. Barnes & Noble, Inc.*, No. 13-CV-7851, 2015 WL 1442449, at *2 (S.D.N.Y. Mar. 30, 2015).

A copyright holder is entitled to a statutory presumption of the validity of the facts stated in its copyright registration, including facts regarding authorship. *See Langman Fabrics, a div. of Blocks Fashion Fabrics, Inc. v. Graff Californiawear, Inc.*, 160 F.3d 106, 111 (2d Cir. 1998) ("Langman Fabrics is entitled to a statutory presumption . . . that Langman Fabrics was the author of the plume design"); *Ward*, 2015 WL 1442449, at *2 ("one of the 'facts stated' on the certificates is that Plaintiff is to be considered the author of the 'text' or 'entire text' of the books published by Sterling"); 17 U.S.C. § 410(c). A registered copyright constitutes "prima facie evidence of the validity

---

substantial similarities exist as to protectible material in the two works." *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir. 1986).

of the copyright and of the facts stated in the [registration] certificate."  17 U.S.C.

§ 410(c).  However, the statutory presumption may be rebutted.  *See Langman Fabrics*,

160 F.3d at 111.  "[T]he party challenging the validity of the copyright has the burden to

prove the contrary."  *Hamil Am.*, 193 F.3d at 98; *see Langman Fabrics*, 160 F.3d at 111;

*Wozniak v. Warner Bros. Ent. Inc.*, 726 F. Supp. 3d 213, 227 (S.D.N.Y. 2024).

"Generally speaking, the presumption of validity may be rebutted [w]here other evidence

in the record casts doubt on the question."  *Fonar Corp. v. Domenick*, 105 F.3d 99, 104

(2d Cir. 1997) (internal quotation marks and citation omitted).  Notwithstanding the

burden shifting, "[a] plaintiff in a copyright infringement suit bears the burden of proving

ownership of the copyright."  *Urbont v. Sony Music Ent.*, 831 F.3d 80, 88 (2d Cir. 2016).

Here, plaintiff has submitted Copyright Registration No. TXu002053010, in

which he is listed as the author for the printed work, plaintiff's "Big City Knights:  The

Biography of:  Cisero 'Sonny' Murphy, A World-Class Champion," on June 15, 2017.

*See* Dkt. 60-5.  The Court finds that plaintiff's registration gives rise to a rebuttable

presumption that plaintiff is the author of the copyrighted works and owns the copyright

thereto.  The burden then shifts to defendant to rebut the presumption of copyright

ownership.  *See Langman Fabrics*, 160 F.3d at 111; *Wozniak*, 726 F. Supp. 3d at 227-28;

*Ward*, 2015 WL 1442449, at *3.

It is black letter law that a non-movant cannot "escape summary judgment merely

by vaguely asserting the existence of some unspecified disputed material facts, or defeat

the motion through mere speculation or conjecture."  *Western World Ins. Co. v. Stack Oil,

Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotation marks and citation omitted);

*see Anderson*, 477 U.S. at 252 (holding that a non-moving party must present more than a

mere "scintilla of evidence" to avoid summary judgment). The Court finds that defendant has come forward with sufficient evidence to rebut the presumption that plaintiff is the author of the copyrighted works.

Here, it is undisputed that before plaintiff obtained his copyright registration on June 15, 2017, defendant obtained Copyright Registration No. TXu002130697, in which he is listed as the author of the copyrighted work, defendant's "Big City Nights: The Biography of The Legendary Cisero Murphy." *See* Dkt. 60-8. Defendant has testified that he wrote defendant's Big City Nights independently and began writing the work in 2012. *See* Def.'s Separate Statement of Material Facts ¶¶ 1(c), 1(d), Dkt. 72 at ECF page 21. Defendant further claims that plaintiff's involvement was limited to typing portions of the manuscript that were dictated to plaintiff by defendant, during a time when defendant's computer was broken. *Id.* ¶ 2(a). Thus, although plaintiff is entitled to a statutory presumption that he is the author of the subject work, defendant has rebutted that presumption with evidence that he is the author.

On the other hand, plaintiff claims that he authored plaintiff's Big City Knights and defendant merely typed and proofread material that plaintiff had already written by hand. *See* Pl.'s 56.1 ¶ 9. Clearly, material issues of fact exist as to the authorship of the copyrighted works. This case boils down to a case of "he said/he said." Viewing the evidence in the light most favorable to defendant, a fact finder could reasonably conclude that defendant's version of the facts is correct. Such a determination is a matter of credibility for the trier of fact. *See Langman Fabrics*, 160 F.3d at 113.

Although plaintiff appears to acknowledge that issues of fact exist as to the authorship of the copyrighted works, he argues that the Court should credit the evidence

submitted by plaintiff over the evidence submitted by defendant.  Pl.'s Mem. at 18-20

("Tyriek Murphy has concocted a story that cannot hide from its obvious deficiencies.").

Here, plaintiff essentially asks the Court to weigh the credibility of the witnesses without

the benefit of live trial testimony.

"Assessments of credibility and choices between conflicting versions of the

events are matters for the [fact finder], not for the court on summary judgment."  *Rule v.*

*Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).  While plaintiff has submitted several

affidavits from non-parties stating that defendant advised the affiant that his role was

limited to proofreading and/or editing, defendant's affidavit expressly denies having

made such statements.  *See* Decl. of Tyriek A. Murphy ¶¶ 2, 6, 9, 10, 12, 15, 17, Dkt. 71.

Even if defendant's statements, standing alone, are insufficient to defeat summary

judgment, coupled with his own earlier copyright registration, defendant has raised a

genuine dispute of material fact as to whether plaintiff is the owner of the copyright at

issue.[5]  *See Ward*, 2015 WL 1442449, at *4 ("the issue of authorship is one for the jury to

decide at trial, not for this Court to decide on summary judgment"); *Maurizio v.*

*Goldsmith*, 84 F. Supp. 2d 455, 466-67 (S.D.N.Y. 2000) ("[T]he question of whether the

language was independently created by [plaintiff] is disputed, and thus one for the trier of

fact."), *aff'd*, 230 F.3d 518 (2d Cir. 2000).  Resolving these factual disputes based on the

credibility of the affiants is not permissible on a motion for summary judgment.  *See*

*Jeffreys*, 426 F.3d at 553-54.  The cases relied on by plaintiff are inapposite since they

arose in the context of a fact finder evaluating credibility at trial, and did not involve

motions for summary judgment.  *See* Pl.'s Mem. at 19.

---

[5] The Court need not reach defendant's alternative arguments that fact issues exist as to whether the parties
co-authored the works or plaintiff assigned his copyrights to defendant.  *See* Def.'s Opp. Mem. at 8-11.

In any event, many of the non-party affidavits submitted by plaintiff are of limited probative value.  For example, Franciana D. Williams states that she "personally witnessed [plaintiff] hand write the manuscript," that "[n]o person was dictating to [plaintiff] while he was writing the manuscript," and that she "personally witnessed Tyriek Murphy review and edit the handwritten manuscript that was written by [plaintiff]."  Aff. of Franciana D. Williams ¶¶ 4-6, Dkt. 60-13.  However, Ms. Williams' statements do not conclusively refute defendant's claims that he is the author of the copyrighted works.  As discussed above, on a motion for summary judgment, the evidence must be viewed and all reasonable inferences must be drawn in the light most favorable to the non-moving party.[6]

Finally, in the introductory paragraph of plaintiff's moving brief, he states that he seeks a declaration that defendant has "willfully infringed" on his copyright.  *See* Pl.'s Mem. at 1.  However, plaintiff's motion does not address that prong of the infringement inquiry whatsoever.  In any event, a determination of whether any alleged infringement by defendant was "willful" must await a finding whether plaintiff is the owner of the copyrighted works.

## III.   Defendant's Motion for Partial Summary Judgment

Defendant cross-moves for partial summary judgment on the issue of plaintiff's entitlement to actual damages for copyright infringement, and the availability of statutory damages and attorney's fees under the Copyright Act.  *See* Def.'s Mem. at 1.

---

[6] Although plaintiff argues that the Court should consider defendant's spoliation of evidence on a motion for summary judgment, Pl.'s Reply at 6, Dkt. 73, plaintiff does not request any particular remedy, nor is it clear how defendant's lost flash drive may have supported plaintiff's claims.  *See* Pl.'s Mem. at 25 ("[t]he metadata on the flash drive would have shown when documents were drafted, edited, uploaded, deleted, and the format of documents").  At trial, the Court will permit plaintiff to develop the record to support a request for sanctions resulting from the alleged spoliation.  *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).

Specifically, defendant argues that summary judgment is warranted as to plaintiff's claim for actual damages because plaintiff has not submitted any evidence to demonstrate that plaintiff suffered actual damages, and because plaintiff failed to disclose a damages computation, as required by the Federal Rules of Civil Procedure. *See id.* at 7. Defendant further argues that plaintiff's claims for statutory damages and attorney's fees under the Copyright Act are barred as a matter of law because defendant's alleged infringement commenced before plaintiff registered his copyright. *Id.*

### A.    Actual Damages and Profits of Infringer

Section 504 of the Copyright Act provides a plaintiff with the option of electing one of two types of remedies for a claim of copyright infringement: "(1) the copyright owner's actual damages and any additional profits of the infringer . . . or (2) statutory damages." 17 U.S.C. § 504(a)(1), (2).

Although plaintiff did not directly address the issues of actual damages and defendant's profits, plaintiff appears to concede that he does not seek actual damages. *See* Pl.'s Opp. Mem. at 5, Dkt. 68 ("The Copyright Act provides that a copyright owner can seek to recover his or her actual damages or statutory damages. Here, plaintiff seeks an award of statutory damages.") (internal citation omitted). Therefore, the Court finds that plaintiff has abandoned his request for actual damages and defendant's profits. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) (court may "infer from a party's partial opposition [to summary judgment] that relevant claims or defenses that are not defended have been abandoned").

B.      **Statutory Damages**

As noted above, section 504 allows a plaintiff to elect to seek statutory damages. 17 U.S.C. § 504(a)(2). Further, section 505 provides that the court may award reasonable attorney's fees to the prevailing party in a copyright action. However, "[section] 412 precludes an award of statutory damages as well as attorney's fees for late-registered [copyrights]." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1012 (2d Cir. 1995); 17 U.S.C. § 412(1).[7] "Even '[w]here the alleged infringement begins before registration and continues after registration, statutory damages and attorney['s] fees are still unavailable.'" *Crowley v. Jones*, 608 F. Supp. 3d 78, 89 (S.D.N.Y. 2022) (quoting *Solid Oak Sketches, LLC v. 2K Games, Inc.*, No. 16-CV-724, 2016 WL 4126543, at *2 (S.D.N.Y. Aug. 2, 2016)). Section 412 "imposes a bright-line rule that precludes recovery of statutory damages and attorneys' fees where the first act of infringement in a series of ongoing infringements occurred prior to the work's copyright registration." *Crowley*, 608 F. Supp. 3d at 89 (quoting *Solid Oak Sketches*, 2016 WL 4126543, at *2); *see Troll v. Uneeda Doll Co.*, 483 F.3d 150, 158 (2d Cir. 2007).

Congressional "intent behind enacting Section 412 was to make available the 'extraordinary relief' of statutory damages only to those who promptly registered their copyrights, and to deny that remedy to those who failed to do so." *Arista Recs. LLC v. Lime Grp. LLC*, No. 06-CV-5936, 2011 WL 1226277, at *4 (S.D.N.Y. Mar. 29, 2011) (citing H.R. Rep. No. 94-1076, at 158 (Sept. 3, 1976)). "Congress, deeming registration useful and important, sought some practical means of inducing it." *Id.* (quoting *Love v.*

---

[7] Because it is undisputed that plaintiff's Big City Knights was not published until 2021, section 412(2) does not apply. *See* 17 U.S.C. § 412(2) ("any infringement of copyright commenced after first publication of the work . . . .").

16

*City of New York*, No. 88-CV-7562, 1989 WL 140578, at *1 (S.D.N.Y. Nov. 17, 1989));

*see Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 329 (4th Cir. 2007) ("By

making registration a precondition for the 'extraordinary remedy' of statutory damages,

Congress sought to motivate speedy registration.").  Not only does the section 412

limitation encourage authors to register their works quickly, but the limitation also has

the effect of enabling potential infringers to readily ascertain whether a work is protected.

*See Southern Credentialing Support Servs., L.L.C. v. Hammond Surgical Hosp., L.L.C.*,

946 F.3d 780, 782 (5th Cir. 2020).

　　Here, the effective date of plaintiff's copyright registrations are June 15, 2017 and

July 3, 2017, respectively.  Def.'s 56.1 ¶¶ 16-17.  Defendant argues that plaintiff is barred

from seeking statutory damages because defendant had already commenced his allegedly

infringing acts *prior* to June 15, 2017.  Def.'s Mem. at 13, Dkt. 63.  In response, plaintiff

argues that defendant's infringement did not commence until August 2017, when the

manuscript was offered for sale to the public.  Pl.'s Opp. Mem. at 7-9.

　　Under the Copyright Act, a copyright represents "a federal grant of a property

interest in the production, replication, publication, and distribution of certain classes of

'original works of authorship fixed in any tangible medium of expression.'"  *Davis v.

Blige*, 505 F.3d 90, 98 (2d Cir. 2007) (quoting 17 U.S.C. § 102(a)).  "Like other forms of

property ownership, copyright ownership is a bundle of discrete rights regarding the

owner's ability to use his property . . . each of which may be transferred . . . and owned

separately."  *Id.* (internal quotation marks and citation omitted).  Section 106 provides for

a variety of exclusive rights protected by the Copyright Act.  These rights include the

right to (1) reproduce the copyrighted work in copies; (2) prepare derivative works based

on the copyrighted work; (3) distribute copies of the copyrighted work to the public by transfer or ownership; (4) perform the copyrighted work publicly; and (5) display the copyrighted work publicly.  17 U.S.C. § 106(1)-(5); *see also Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998) (Copyright Act "grants copyright owners a bundle of exclusive rights, including the rights to 'reproduce the copyrighted work in copies'").  A person who makes infringing copies of a work infringes the copyright owner's right of reproduction under section 106(1), even if that person does not also infringe the distribution right provided in section 106(3) by offering the work for sale.  2 *Nimmer on Copyright* § 8.02[C] (2025).  "[C]opyright infringement occurs whenever an unauthorized copy is made, even if it is used solely for the private purposes of the reproducer."  *Alcatel USA, Inc. v. DGI Techs.*, 166 F.3d 772, 787 n.54 (5th Cir. 1999); *see also Hachette Book Grp., Inc. v. Internet Archive*, 664 F. Supp. 3d 370, 378 (S.D.N.Y. 2023) (finding it undisputed that defendant library "violated the Publishers' reproduction rights, by creating copies of the Works in Suit, 17 U.S.C. § 106(1)"), *aff'd*, 115 F.4th 163 (2d Cir. 2024).  "[R]eproduction standing alone constitutes a prima facie violation of the copyright owner's rights."  2 *Nimmer on Copyright* § 8.02[C]; *see also Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856-57 (9th Cir. 2017) (finding that "copy[ing] the Studios' works from discs onto a computer" infringed the exclusive reproduction right); *Capitol Recs., LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 648 (S.D.N.Y. 2013) ("Courts have consistently held that the unauthorized duplication of digital music files over the Internet infringes a copyright owner's exclusive right to reproduce."), *aff'd*, 910 F.3d 649 (2d Cir. 2018).

It is undisputed that by March 7, 2017, defendant had sent Dorrance Publishing copies of the manuscript, and, by May 17, 2017, Dorrance and defendant exchanged edits of the manuscript as part of the process that culminated in publishing defendant's Big City Nights on August 31, 2017.  Def.'s 56.1 ¶¶ 10-13.  Therefore, defendant's alleged infringement commenced prior to plaintiff's earliest copyright registration on June 15, 2017.

In response, plaintiff argues that defendant's pre-registration conduct is irrelevant here because it involves infringement of a different right than the publishing that occurred post-registration.  *See* Pl.'s Opp. Mem. at 7.  The Fifth Circuit rejected a similar argument in *Southern Credentialing v. Hammond Surgical Hosp., L.L.C.*, 946 F.3d 780 (5th Cir. 2020).  In that case, the district court found that plaintiff was entitled to statutory damages because the defendant's pre-registration conduct of reproducing copyrighted forms (section 106(1)) was "different in kind" from its post-registration conduct of making the forms publicly available on its website (section 106(3)).  *Id.* at 786.  However, the Fifth Circuit rejected that argument, holding that "section 412 bars statutory damage awards when a defendant violates one of the six[8] exclusive rights of a copyright holder *preregistration* and violates a different right in the same work *after* registration."  *Id.* at 786 (emphasis added).  The court reasoned that any other conclusion would be inconsistent with the language of the Copyright Act, which itself, does not distinguish between infringements of different rights.  *Id.* at 786-87; *see* 17 U.S.C. § 501(a) ("Anyone who violates *any* of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . . .").  This interpretation of section 412 further promotes

---

[8] The sixth exclusive right pertains to sound recordings.  17 U.S.C. § 106(6).

Congress' purpose of creating an incentive for early copyright registration.  *See Southern Credentialing*, 946 F.3d at 787.  This Court finds the Fifth Circuit's reasoning persuasive.  *See* 2 *Nimmer on Copyright* § 7.16[C][1][c] ("The bar on awarding heightened damages applies . . . even if the sole defendant, after registration, engaged in a different type of infringement from its preregistration conduct.").

The Court finds that defendant's alleged acts of infringement commenced before plaintiff registered his copyrights.  Indeed, although the Complaint does not specifically allege when defendant began infringing plaintiff's copyrights, plaintiff alleges that defendant infringed on his copyrights through defendant's "*reproduction*, distribution, public display, and sale of the Infringing Work."  Compl. ¶ 135 (emphasis added).  Thus, plaintiff's own allegations undermine his argument that the only "right violated herein is plaintiff's right to distribute copies of the copyrighted work to the public by sale."  Pl.'s Opp. Mem. at 7.

The cases relied on by plaintiff do not stand for the proposition that infringement commences only when a work is made available to the public.  For example, in *Tangorre v. Mako's, Inc.*, No. 01-CV-4430, 2003 WL 470577 (S.D.N.Y. Jan. 6, 2003), the magistrate judge recommended finding only that defendant's conduct in providing plaintiff's photographs to a printer to create a calendar did not violate the plaintiff's "exclusive right to 'display' his copyrighted works publicly" under section 106(5).  *Id.* at *9.  That case did not address whether defendant's conduct violated plaintiff's right of reproduction under section 106(1).  Moreover, *Tangorre* actually supports defendant's argument that plaintiff is barred from seeking statutory damages here.  In that case, the court recommended denying plaintiff's request for statutory damages because the first act

20

of infringement took place when defendant used the photographs to create a calendar, which was months before the printer actually delivered the printed calendars to defendant. *Id.* at *12 ("The first infringement by Mako's took place months earlier, when it created the Mako's Calendar.").

Likewise, here, defendant's alleged first infringement occurred months before plaintiff registered his copyrights, when defendant gave Dorrance Publishing a copy of the allegedly infringing work and exchanged drafts with Dorrance as part of the publishing process.

Accordingly, the Court finds that section 412 bars plaintiff's claim for statutory damages and attorney's fees under the Copyright Act. Even if the Court finds after trial that defendant infringed plaintiff's copyrights, plaintiff will not be entitled to an award of statutory damages or attorney's fees under the Copyright Act. *See Knitwaves*, 71 F.3d at 1012.

## Conclusion

For the reasons set forth above, the Court denies plaintiff's motion for partial summary judgment on the issue of ownership and grants defendant's motion for partial summary judgment as to plaintiff's requests for actual damages, defendant's profits, and statutory damages and attorney's fees under the Copyright Act.

**SO ORDERED**

Dated: Brooklyn, New York
       March 30, 2025

                              s/ James R. Cho
                              James R. Cho
                              United States Magistrate Judge

21